**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-cv-25395

ICEBREAKERS, ALLYSON BASDEN,
ANDREW CARO, KAITLYN DALEY,
CALEB DEAN, JAMES KUHLMAN,
REINIER LUNA, and KATYAYANI TRIPATHI,

     *Plaintiffs*,

v.

JEANETTE NUÑEZ, in her official capacity as
President of Florida International University;
CARLOS DUART, in his official capacity as Chair
of the Florida International University Board of
Trustees; AMELIA RODRIGUEZ; DEVIN
PARRA; and PHILLIP LLOYD HAMILTON,

     *Defendants*.

_____/

**COMPLAINT**

1. In its relatively short history, Florida International University has managed to accrue a number of titles and accolades. FIU has been named the "No. 1 institution for awarding . . . degrees to Hispanic students," who are nearly 70 percent of its undergraduates, and a "champion" for first-generation students, who make up a third of the student body. FIU backs up the "international" in its name by hosting thousands of international students, including a large community of first- and second-generation immigrant students.

2. Last year, FIU earned a new title: the first college or university in the country to volunteer their campus police to ICE's 287(g) program. 287(g) agreements deputize local police with the powers of ICE agents and empower them to conduct federal immigration enforcement.

3. In response to this unprecedented intrusion into their campus life, FIU students, faculty, and other members of the university community have spoken out and taken actions to protest both the federal government's anti-immigrant policies and the university's complicity.

4. In particular, the student-led coalition ICEBreakers has mobilized students, faculty, and others to end FIU's partnership with ICE. In March 2026, ICEBreakers organized a silent protest of FIU's entanglement with ICE at an on-campus event with FIU President Jeanette Nuñez and retired baseball player Alex "A-Rod" Rodriguez. Several students stood up during the event wearing "ICE OFF FIU" t-shirts, silently stood for a moment, and then silently walked out.

1

5. The context for this protest is not merely local. Across the country, millions of Americans have protested the unprecedented expansion of immigration enforcement and its cruel and inhumane consequences for the lives of their friends, families, and neighbors.

6. Despite claiming "Freedom – of thought and expression" as a core value in its mission statement, FIU could not let the ICEBreakers' silent exercise of free expression go unpunished. The university charged seven of the students with misconduct for violating an FIU rule prohibiting "expressive activities" indoors.

7. FIU's sweeping rule blatantly violates Plaintiffs' First Amendment rights. Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). This maxim is especially true at universities, since "[n]owhere is free speech more important than in our leading institutions of higher learning." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1128 (11th Cir. 2022).

8. Plaintiffs bring this suit against FIU, as well as its individual employees responsible for carrying out its unconstitutional policy, to vindicate their First Amendment rights.

## I. PARTIES

### A. Plaintiffs

9. Plaintiff ICEBreakers is a student-led coalition and unincorporated membership organization mobilizing students, faculty, and other university community members to end FIU's partnership with ICE. Founded in August 2025, ICEbreakers' members include the other seven Plaintiffs (collectively, the Individual Plaintiffs) and other FIU students.

10. Plaintiff Allyson Basden, the daughter of FIU alumni, is a junior political science major at FIU. She joined ICEBreakers after hearing other students at an ICEBreakers protest speak in opposition to the university's 287(g) agreement.

11. Plaintiff Andrew Caro is a senior music education major at FIU. As a first-generation college student whose parents immigrated from Mexico, he joined ICEBreakers to support the larger immigrant and Latino communities.

12. Plaintiff Kaitlyn Daley is a junior psychology major at FIU. She has been an ICEBreakers member since the spring of 2026 when she first learned about FIU's 287(g) agreement and chose to channel her disappointment in her university towards fighting for what she believes in.

13. Plaintiff Caleb Dean is a junior political science major at FIU. He enrolled at FIU

due to the school's status as an "international" university and has been an ICEBreakers member since participating in an outdoor sit-in hosted by the organization.

14. Plaintiff James Kuhlman is a sophomore marine sciences major at FIU. He joined ICEBreakers after learning that one of his friends was on the organization's executive board and wanting to get more involved in combating the university's complicity in federal immigration enforcement.

15. Plaintiff Reinier Luna is a freshman political science major at FIU. His first involvement with ICEBreakers was participating in the March 13, 2026 silent protest for which the school has now disciplined him.

16. Plaintiff Katyayani Tripathi is a sophomore psychology major at FIU. As the daughter of immigrants, she joined ICEBreakers as a way to help the larger immigrant community on campus and throughout the country.

**B. Defendants**

17. Defendant Jeannette Nuñez, sued in her official capacity, is FIU's President. In that role, she serves as the chief executive officer to the FIU Board of Trustees and is responsible to the Board for all operations of the university, including student discipline.

18. Defendant Carlos Duart, sued in his official capacity, is the chair of FIU's Board of Trustees. The Board is not only responsible for administering the university and setting its policy, but it is also tasked with implementing the State's higher education policies. This includes complying with the Campus Free Expression Act, which declares that "[e]xpressive activities protected under the First Amendment to the United States Constitution and Art. I of the State Constitution include, but are not limited to, any lawful oral or written communication of ideas, including all forms of peaceful assembly, protests, and speeches."

19. Defendant Amelia "Amy" Rodriguez, sued in her individual capacity, is FIU's Associate Director of Student Conduct & Academic Integrity. In that role, she was responsible for investigating Plaintiffs' protest, determined each student should be charged with misconduct for failing to comply with Regulation 110, and issued the charges to each of them.

20. Defendant Devin Parra, sued in his individual capacity, is FIU's Assistant Dean of Students for Student Conduct & Academic Integrity. He served as the Individual Plaintiffs' misconduct hearing officer, determined that they were responsible for the misconduct charged, and ordered their sanctions.

21.     Defendant Phillip Lloyd Hamilton, sued in his individual capacity, is FIU's Assistant Vice President of Student Belonging & Support. He reviewed the Individual Plaintiffs' appeals of their misconduct determination and denied the appeals.

## II.  JURISDICTION AND VENUE

22.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. §§ 1983 and 1988, because this action arises under the Constitution and laws of the United States.

23.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred here.

## III.  FACTUAL ALLEGATIONS

### A.  Immigration Enforcement in America and FIU's Collaboration with ICE

24.     For over a year, the nation has experienced cruel, unprecedented, and often illegal attacks on immigrant communities. Attack strategies have been wide-ranging, from changes to visa and immigration status regulations, to armed conflict and mass immigration sweeps and detention.

25.     The nation's educational institutions have served a front in this conflict. On April 10, 2025, the federal government revoked 29 international student visas for Florida university students. Eighteen of those students were enrolled at FIU.

26.     The next day, amidst the fear and uncertainty prompted by the visa revocations, FIU confirmed its intent to deputize its campus police as immigration enforcement officers in the FIU community, through ICE's 287(g) program.

27.     Before 2025, no university or college police department had ever participated in a 287(g) agreement, anywhere in the country.

28.     FIU was the first volunteer. In March 2025, FIU's police department signed a 287(g) agreement, becoming the first institution of higher education in the nation ever to volunteer for such ICE duties.

29.     Since then, the only universities and colleges to sign 287(g) agreements have been in Florida; no other educational institutions in the United States participate in the enforcement program. Florida's universities' eager enlistment is an aberration nationwide.

30.     On July 7, 2025, ICE executed and finalized its 287(g) agreement with FIU.

31.     After news of FIU's 287(g) plans broke, FIU's faculty union called on the university to withdraw. "This move threatens the safety and trust of a student body that is majority

Hispanic, heavily immigrant, and home to nearly 600 students protected by the Deferred Action for Childhood Arrivals (DACA) program," the union said. "We will not stand by silently as our students are targeted, nor as fear and division are sown in a campus community built on resilience and unity."

32. Since then, FIU's enlistment in the federal immigration enforcement regime has sparked intense debate on campus. Through assemblies, town halls, faculty meetings, petitions, and other fora, members of the university community have discussed this issue and expressed their opposition to FIU's actions.

33. This opposition grows from the grievous harms immigration enforcement wreaks. On information and belief, faculty and student groups have reported tremendous fear among immigrant students, as well as American citizen students with immigrant family members, after the 287(g) agreement came into effect. Instructors have reported that some students have been afraid to attend class in person.

34. FIU's participation in 287(g) has not just put immigrant students at risk, it has threatened the social fabric of the whole university.

**B. ICEBreakers and Plaintiffs' Protest**

35. In August 2025, several FIU students united to form ICEBreakers. ICEBreakers' mission is to mobilize university community members to end FIU's partnership with ICE.

36. ICEBreakers carries out its mission by educating the university community about FIU's collaboration with ICE and by galvanizing community members to join in direct actions to protest that collaboration. Through social media, education, town hall gatherings, public records requests, and other events held since its forming, ICEBreakers has highlighted ICE's inhumane practices and the cruelty of the federal and state governments' immigration policies.

37. On March 13, 2026, ICEBreakers staged a silent demonstration at a university event featuring President Nuñez and baseball player A-Rod. The event was held at FIU's Student Academic Success Center, in a large auditorium with a capacity of 700 people. The event was part of FIU's Presidential Speaker Series, which has hosted a number of diverse speakers. The event was open to the public.

38. Several members of ICEBreakers, including the Individual Plaintiffs, engaged in a silent protest during the event by standing up, briefly facing the audience, and then walking out. They each wore shirts prominently bearing the message "ICE OFF FIU":



39.     Plaintiffs were silent during the duration of their protest.

40.     President Nuñez and A-Rod continued their conversation during and after Plaintiffs' protest.

41.     The protest neither materially nor substantially disrupted the event or university operations.

42.     The entire protest, from when the ICEBreakers stood up until they left the auditorium of their own accord, was less than five minutes long.

43.     At no point while the students were standing at their seats did anyone ask them to sit down or leave.

44.     At no point did any event attendees complain to any FIU staff that the students were disturbing them or blocking their view.

**C.  FIU's Investigation and Punishment of Plaintiffs' Protest**

45.     Despite the lack of disruption the silent demonstration caused, FIU Police investigated the protest, and, ten days later, on March 23, 2026, referred the case to the Office of Student Conduct & Academic Integrity (SCAI) for consideration of further action.

46.     Defendant Rodriguez was in charge of investigating the protest for SCAI.

47.     On April 1, Ms. Rodriguez emailed Jehnny Rivera, the Executive Director of the Office of University Protocol, Ceremonies & Events (and whose office oversaw the event), requesting information about the protest. The email read (with emphasis added):

> I am investigating an alleged incident that occurred during an event on March 13, 2026, in SASC room 160. According to the

information I received, there were individuals who stood up and obstructed the view of other attendees while the speaker was actively addressing the audience. Do you have any additional information regarding this matter? **As a result of this situation can you confirm if there was a disruption or a delay to the event? Did any attendees come forward at any point during or after the event to share that their view was obstructed or that they were bothered by the situation?**

Any additional information you can provide would be helpful in determining next steps.

48. Ms. Rivera responded the same day. Her reply read (with emphasis added):

Thank you for reaching out. Yes, there was an incident during the event in which approximately 10–15 individuals stood up, faced the audience, and removed their sweaters or sweatshirts to display identical t-shirts. The incident lasted approximately 3–5 minutes.

One of the speakers briefly acknowledged the incident; however, **it did not disrupt the event**, **and the speakers were able to continue their discussion. No other attendees approached me directly to raise concerns about the incident.**

Please feel free to reach out if you need anything else.

49. On April 7, despite Ms. Rivera's statements that no disruption occurred, Ms. Rodriguez issued letters to each Individual Plaintiff, charging them with misconduct for failing to comply with FIU Regulation 110, "Expressive Activities in Outdoor Areas of Campus."

50. Ms. Rodriguez and FIU's University Counsel Ryan Kelley later specified that each student was being charged with failing to comply with Section 3 of Regulation 110 based on their silent protest at the event.

51. Section 3 of Regulation 110 provides:

To protect health, safety, and welfare and prevent disruption of University activities, protests, parades, marches, picketing, demonstrations, and other similar expressive activities are prohibited inside University buildings or other University indoor facilities. University buildings and other University indoor facilities are designed for instruction, study, reflection, group discussion, research, administrative functions, and other University activities and operations. This provision will be enforced in a content and viewpoint neutral manner.

52. Regulation 110 defines "expressive activities" as "activities such as assemblies, demonstrations, exercises of free speech, protests, parades, marches, and picketing protected under

7

the First Amendment to the United States Constitution and Article 1 of the Florida Constitution. Expressive activity does not, for purposes of this regulation, include commercial speech."

53. Throughout April and May, Ms. Rodriguez held "information sessions" with the Individual Plaintiffs. Also in attendance were either Mr. Kelley, FIU's Associate General Counsel Sharee Eriks, or both.

54. At each information session, Ms. Rodriguez told the students that she was *not* charging them with disruptive conduct, because that was not supported by her investigation.

55. "Disruptive conduct" is a violation of FIU policy, which defines it as "[b]ehavior that substantially and materially disrupts, disturbs, impairs, interferes with or obstructs the orderly conduct, processes and functions of the University or the rights of other members of the University community."

56. Based on Ms. Rodriguez's representations to the students, she had concluded that the students' protest had *not* substantially and materially disrupted, disturbed, impaired, interfered with, or obstructed the orderly conduct, processes, and functions of the university, or the rights of other members of the university community.

57. Investigation of the incident corroborated that no attendees or other university staff complained to the police that the students obstructed their view. As noted above, the staff member in charge of the event confirmed that the protest "did not disrupt the event."

58. Following their information sessions with Ms. Rodriguez, Mr. Kelley, and Ms. Eriks, the Individual Plaintiffs each sent Ms. Rodriguez a request for information, including asking whether SCAI was aware of the seminal case on campus speech, *Tinker*, whether SCAI had communicated with the University's Office of General Counsel about *Tinker* and how it applies to the students' conduct, and whether SCAI would request an advisory opinion on whether the conduct is constitutionally protected under *Tinker*, even if it may violate the text of FIU's policy.

59. Ms. Rodriguez did not respond to these questions, except to say in a May 6 letter to each Individual Plaintiff that "any legal questions should be directed to University Counsel, Ryan Kelley[.]"

60. The students took Ms. Rodriguez up on that offer. But outreach to Mr. Kelley— including sharing *Tinker*, *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004), *Hatcher ex rel. Hatcher v. DeSoto County School District*, 939 F. Supp. 2d 1232 (M.D. Fla. 2013), and *Gillman ex rel. Gillman v. School Board for Holmes County*, 567 F. Supp. 2d 1359 (N.D. Fla.

2008), and warning that following through with discipline could subject Ms. Rodriguez and FIU to legal liability—did not resolve the misconduct cases.

61. On May 18, the students requested that Ms. Rodriguez close the misconduct cases and explained that they had the legal right under the U.S. and Florida Constitutions to engage in non-disruptive political expression without the threat of discipline.

62. But Ms. Rodriguez did not close the cases.

63. Instead, on May 29, she informed each student, among other things, that Defendant Parra, the Assistant Dean of Students for SCAI, would serve as their hearing officer.

64. Mr. Parra held a conduct hearing for all Individual Plaintiffs except James Kuhlman on June 19.[1] The hearing concluded with a presentation including the students' arguments about why Regulation 110 and FIU's enforcement of it would violate the First Amendment.

65. On June 29, Mr. Parra sent each Individual Plaintiff (except Mr. Kuhlman) a letter finding them responsible for the misconduct charged—failing to comply with Regulation 110(3) at the March 13 event.

66. Mr. Parra issued each student two sanctions: (1) a written reprimand in the form of the letter, and (2) a directive compelling their speech in the form of a "video reflection."

67. The video reflection sanction is to:

> Create a two-minute video explaining your understanding of FIU Regulation 110, what is expected under FIU Regulation 110 related to indoor and outdoor areas, and how you will apply what you have learned moving forward. The video must be your original work. The video must be thoughtful and substantive in its response to the prompt. The Office of Student Conduct and Academic Integrity reserves the right to ask you to resubmit your work if it does not adhere to the outlined instructions.

68. The six Individual Plaintiffs who were found responsible for misconduct each appealed that decision. On July 16, Defendant Hamilton, Assistant Vice President of Student Belonging & Support, denied the appeals and upheld the original finding that the students were responsible for the charged misconduct and must suffer the assigned sanctions.

69. Now, the Individual Plaintiffs (except Mr. Kuhlman) must submit the required "video reflections" by September 4, 2026. If they fail to do so, or fail to resubmit one if SCAI

---

[1] Mr. Kuhlman requested his hearing be postponed due to a conflict with his summer job in Orlando. The request was granted. His charge is still pending, and his hearing will be rescheduled.

determines their original submission "does not adhere to the outlined instructions," FIU will place a "student conduct hold" on all their academic records. Such a hold renders a student unable to register for classes or obtain financial aid, transcripts, a diploma, or other academic records. FIU can also bring further student conduct action for failure to complete the required video reflection.

### D. Plaintiffs' Future Expressive Activities

70. ICEBreakers, including multiple Individual Plaintiffs, desire to engage in additional "expressive activities," as Regulation 110 defines that term, in the upcoming 2026–27 academic year and those that follow.

71. Specifically, ICEBreakers and multiple Individual Plaintiffs plan to engage in protests and other expressive activities in indoor areas of the FIU campus to promote their political message that FIU should end its relationship with ICE. ICEBreakers' planned expressive activities indoors include wearing their "ICE OFF FIU" t-shirts and buttons together, posting flyers, tabling to inform passing students about FIU's 287(g) agreement and to convince them to join their effort, and speaking to students and distributing flyers both inside and outside classrooms.

72. ICEBreakers also hopes to hold demonstrations similar to the March 13, 2026, protest, and is discussing organizing such demonstrations.

73. Plaintiffs and other ICEBreakers members fear that FIU will enforce its blanket ban on expressive activities indoors against them if they try to exercise their First Amendment rights.

74. Plaintiffs and other ICEBreakers members are unable to determine what expressive activities would be permitted under Regulation 110 and what would be prohibited.

75. It is foreseeable that FIU will indeed enforce its ban on First Amendment-protected expressive activities indoors, including against the types of peaceful activities Plaintiffs wish to engage in during the upcoming school year, and in future ones.

## CLAIM FOR RELIEF

### COUNT ONE

### Violation of the First Amendment (42 U.S.C. § 1983)

*By Plaintiffs Basden, Caro, Daley, Dean, Luna, and Tripathi Against All Defendants;*
*by Plaintiff Kuhlman Against Nuñez, Duart, and Rodriguez;*
*and by Plaintiff ICEbreakers Against Nuñez and Duart*

76. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint.

77. The First Amendment prohibits states from "abridging the freedom of speech . . . or of the right of the people to peaceably to assemble, and to petition the Government for a redress of grievances."

78. The First Amendment protects university students' right to protest on campus. Even *schoolchildren* have the right to engage in *in-classroom* protests that do not "materially disrupt[] classwork or involve[] substantial disorder or invasion of the rights of others." *Tinker*, 393 U.S. at 513.

79. University students have even broader speech rights than schoolchildren, meaning the government has even less leeway to restrict protest and expression on university campuses. *Speech First*, 32 F.4th at 1128–29 (citing *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003)), *Healy v. James*, 408 U.S. 169, 180 (1972), and *Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957) (Frankfurter, J., concurring)); *see also New Jersey v. T.L.O.*, 469 U.S. 325, 339 (1985) (recognizing that grade schools have special needs that require "the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult"); *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967); *Pernell v. Fla. Bd. of Governors*, 181 F.4th 1135, 1144 (11th Cir. 2026).

80. The First Amendment also prohibits the government from targeting speech based on its communicative content. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Such "content-based laws" are presumptively unconstitutional. *Id.*

81. Plaintiffs were punished for engaging in political expression.

82. "The First Amendment affords the broadest protection to such political expression in order 'to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).

83. Further, the First Amendment prohibits overbroad regulations that "cover[] substantially more speech than the First Amendment allows . . . ." *Speech First*, 32 F.4th at 1125.

84. And the First Amendment right to assemble specifically includes "the right in a peaceable and orderly manner to protest by silent and reproachful presence . . . ." *Brown v. Louisiana*, 383 U.S. 131, 142 (1966).

85. FIU Regulation 110(3) is an unconstitutional restriction on students' rights to protest, assemble, and engage in other expressive activities protected under the First Amendment.

86. Regulation 110(3) impermissibly proscribes expressive activities based on the

11

message expressed, discriminating between forbidden "expressive activities," including protest-based speech and assembly, and other permitted speech, including commercial speech.

87.     Regulation 110(3) is also impermissibly overbroad, since it "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep[.]" *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) (quotation omitted).

88.     Plaintiffs' protest was expression and assembly subject to First Amendment protection.

89.     Defendants Rodriguez, Parra, and Hamilton were acting under color of state law and violating the Individual Plaintiffs' clearly established rights when they enforced FIU Regulation 110 to punish the Individual Plaintiffs for their protest.

90.     Defendants' restrictions on Plaintiffs' protected expression have caused, and will continue to cause, Plaintiffs irreparable harm, including chilling their constitutionally protected speech and expression.

91.     As a direct result of Defendants' enforcement of Regulation 110, Plaintiffs have suffered and continue to suffer emotional distress and other damages, all to their detriment.

92.     The First Amendment forbids FIU Regulation 110's blanket ban on "expressive activities" indoors, and therefore FIU's and its employees' actions against Plaintiffs to enforce Regulation 110 violate Plaintiffs' rights under the First and Fourteenth Amendments.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court enter judgment in their favor and:

A.  Declare FIU Regulation 110(3) unconstitutional in violation of the First Amendment;

B.  Enjoin Defendants Nuñez and Duart from enforcing Regulation 110(3) against Plaintiffs or other ICEBreakers members;

C.  Award the Individual Plaintiffs compensatory damages in an amount to be determined at trial against Rodriguez, Parra, and Hamilton;

D.  Award the Individual Plaintiffs punitive damages against Rodriguez, Parra, and Hamilton in an amount sufficient to punish their knowing and reckless disregard for Plaintiffs' constitutional rights and to deter similar conduct;

E.  Award Plaintiffs reasonable attorneys' fees and costs; and

F.  Grant any other relief the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.


Respectfully submitted August 11, 2026,

/s/ *Nicholas L.V. Warren*

Nicholas L.V. Warren (FBN 1019018)
Caroline A. McNamara (FBN 1038312)
Michelle Morton (FBN 81975)
Amy Godshall (FBN 1049803)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
cmcnamara@aclufl.org
mmorton@aclufl.org
agodshall@aclufl.org
dtilley@aclufl.org

Reid Levin (FBN 1038933)
**Reid Levin, PLLC**
P.O. Box 880682
Boca Raton, FL 33488
(561) 866-6089
reid@reidlevinpllc.com

Adam C. Saper (FBN 111750)
Miriam Fahsi Haskell (FBN 69033)
Alana Greer (FBN 92423)
**Community Justice Project**
3000 Biscayne Boulevard, Suite 106
Miami, FL 33137
(305) 907-7697
adam@communityjusticeproject.com
miriam@communityjusticeproject.com
alana@communityjusticeproject.com

James Slater (FBN 111779)
**Slater Legal PLLC**
9000 Dadeland Boulevard, Suite 1500
Miami, FL 33156
(305) 523-9023
james@slater.legal

*Counsel for Plaintiffs*

13