**FIU-2501 Student Conduct and Honor Code**

As an academic community, Florida International University (FIU) fosters the intellectual exchange of ideas, knowledge, and experience. It is the responsibility of the University to provide a safe and stimulating environment in which scholarship and personal growth may occur. The desired effect is that Students will take advantage of this environment to develop intellectually as well as to participate as responsible, contributing citizens of our community. Being a contributing Student also comes with responsibility to adhere to the Student Conduct and Honor Code (Code). The ultimate responsibility for knowing University requirements and regulations rests with the Student, regardless of institutional or program affiliation. Nothing in this Regulation should be interpreted to abridge the right of any member of the University community of rights granted under the United States or Florida Constitution and/or any other applicable law including, but not limited to, the freedom of expression protected by the First Amendment. FIU endorses the Board of Governors of the State University System of Florida's Statement of Free Expression to support and encourage full and open discourse and the robust exchange of ideas and perspectives on our campuses. We view this as an integral part of our ability to deliver a high-quality academic experience for our students, engage in meaningful and productive research, and provide valuable public service.

Those charged with and found Responsible for violations of the Code will be subject to appropriate action as outlined herein. For the most updated Code, please refer to the website of Student Conduct and Academic Integrity (SCAI) at conduct.fiu.edu.

Undergraduate, Graduate, and Professional Students at FIU are expected to adhere to the highest standards of integrity in every aspect of their lives. Honesty in academic matters is part of this obligation. Each Student shall be responsible for their conduct from the time that they have been notified of admission through the actual awarding of a degree, including the academic year and during periods between terms of actual enrollment. The Code shall apply to a Student's conduct even if the Student withdraws from the University or is academically dismissed, while a conduct matter is pending, or if the conduct is not discovered until after a Student has withdrawn, been academically dismissed, or a degree has been awarded.

Academic integrity is the adherence to those special values regarding life and work in an academic community. Code violations may lead to suspension or expulsion from the University if a determination of responsibility has been made. These sanctions will be determined based on severity of incident and prior violations of the Code.

The safety and well-being of our community is the University's foremost concern. It is the policy of the University that acts of harassment and violence will not be tolerated. Any act of intimidation, threat of violence, or act of violence committed against other members of the University when committed within the jurisdiction of the Code is prohibited. Any Student or Student Organization found responsible for a violation of this standard will be subject to discipline up to and including expulsion pursuant to the Code.

Any Sexual Misconduct or Sexual Harassment, as defined pursuant to Regulation FIU-105, will be handled in accordance with Regulation FIU-105.

1. **DEFINITIONS**
   i. **Academic Misconduct**: Any act or omission by a Student, which violates the concept of academic integrity and undermines the academic mission of the University in violation of the Code.
   ii. **Advisor**: Any person chosen by the Respondent to assist throughout the Student Conduct and/or Academic Misconduct processes (e.g., faculty, staff, parent/guardian, attorney, friend, alumni). The Advisor may not be a Witness or serve in any other role in the current process including investigator, decider of fact, hearing officer, member of a committee or panel convened to hear or decide the charge or any appeal. The advisor may be present to advise the Respondent and may participate in all aspects of the proceeding but shall not testify for the Respondent. Proceedings may not be unreasonably delayed due to the scheduling conflicts of an advisor, and it is the responsibility of the Respondent to communicate relevant information to their advisor and to ensure that their advisor comports themselves in a manner which respects the educational-administrative conduct process. After an appropriate warning, the University reserves the right to stop a proceeding and remove an advisor whose presence disrupts the conduct proceedings.
   iii. **Business Day**: A day when the University is open for regular business operations from 8:30 a.m. up to 5:00 p.m. Eastern Standard Time. In computing any time-period specified in this Code, the day of the event, act, or default that initiates the period shall be excluded.
   iv. **Character Witness Statement**: A statement relating to the general character and reputation of the person.
   v. **Charge**: The written statement of the alleged violations of the Code.
   vi. **Complainant:** Any individual who may have been the subject of Harassment, Retaliation, or Stalking by the Respondent regardless of whether the individual makes a report.
   vii. **Coercion**: Conduct, intimidation, and/or expressed or implied threats of physical, emotional, financial, or any other type of harm that would reasonably place an individual in fear of immediate or future harm and that is employed to force or compel someone to engage in any sexual contact or any other type of involuntary conduct not covered by FIU Regulation 105, especially conduct which would endanger or be detrimental to the Complainant. Examples of Coercion include:
      i. Causing the deliberate Incapacitation (see below for definition) of another person; and
      ii. Conditioning an academic benefit or employment advantage.
   viii. **Consent**: Incorporated as defined by FIU Regulation 105.
   ix. **Final Agency Action**: The written decision resulting from the Student Conduct and/or Academic Misconduct processes which finally determines the rights or obligations of the Respondent. Decisions of the Hearing Body constitute Final Agency Action unless there is a timely appeal. If a decision is timely appealed, the decision of the appellate body constitutes Final Agency Action.
   x. **Hazing**: Any action or situation that recklessly or intentionally endangers the mental or physical health or safety of a Student for purposes including, but not

2

limited to, initiation or admission into, affiliation with, or the perpetuation or furtherance of a tradition or ritual of any Student Organization operating under the sanction of the University or other organization or group not officially recognized by the University. Although hazing is typically related to a person's initiation or admission into, or affiliation with a Student Organization, athletic team (intramural, club or intercollegiate), extracurricular activity or any other University group or organization, it is not necessary to have direct proof that a person's initiation or continued membership is contingent upon participation in the activity for a charge of hazing to be upheld. The actions of active, prospective, former, or associate members (pledges) of a Student organization may be considered hazing. Organizational leaders who plan a hazing event will be held Responsible even if not in attendance at an event where the hazing occurs. Hazing does not include customary athletic events or similar contests or competitions or any activity or conduct that furthers a legal and legitimate objective.

xi. **Hearing Body**: Student Conduct hearings consist of a Hearing Officer (Administrative Hearing) or, if a Student Conduct Committee, two (2) Students, a faculty/staff member, and a non-voting Hearing Officer. Academic Misconduct hearings consist of a Hearing Officer (Administrative Hearing) or, if a Student Conduct Committee, three (3) Students, and two (2) full-time faculty members, and a non-voting Hearing Officer. The Hearing Body is authorized by the Chief Student Affairs Officer or designee to conduct Student Conduct hearings as set forth in this Code, and do so in an impartial manner.

xii. **Hearing Officer**: The SCAI Director, or respective designee(s) who adjudicates the case in an impartial manner.

xiii. **Immediate Medical Assistance**: Aid that includes, but is not limited to, calling or seeking additional assistance, rendering cardiopulmonary resuscitation (CPR) to a victim, clearing an airway for the victim to breathe, using a defibrillator (AED) to assist the victim, or rendering any other assistance to the victim which the Student intended in good faith to stabilize or improve the victim's condition while waiting for medical assistance or law enforcement to arrive.

xiv. **Impact Statement**: A statement (oral or in writing) that describes how the Reporting Party or Respondent has been impacted by the incident that is the basis for the Charge.

xv. **Incapacitation**: Incapacitation is the inability, temporarily or permanently, to give Consent because the individual is mentally and/or physically helpless, or the individual is unconscious, asleep, or otherwise unaware that the activity is occurring.

xvi. **Instructor**: The Instructor of record for a course in which a violation(s) of Academic Misconduct is alleged.

xvii. **Interim Suspension**: An immediate temporary (i.e., a limited period of time) separation from the University.

xviii. **On-Campus Housing**: Such housing owned, controlled, and operated by the University, including privatized housing and sorority and fraternity housing on-campus.

3

xix.   **Policy**: The written procedures, policies, or regulations of the University (as they may be amended from time to time) as found in, but not limited to, the Florida International University Board of Trustees regulations, the Code, FIU Regulation 105, the Undergraduate/Graduate/Professional Catalogs, the Student Handbook, the University Housing Resident Handbook, and/or Campus Life/Wellness & Recreation Center policies.

xx.   **Preponderance of the Evidence**: When the information that is presented supports a finding that it is more likely than not that a violation occurred.

xxi.   **Receipt of Written Notice**: When Written Notice (see below for definition) has been sent electronically to the official University email address.

xxii.   **Reporting Party**: Any person who reports an alleged violation of the Code.

xxiii.   **Respondent**: A student or student organization charged with violating the Student Conduct and Honor Code.

xxiv.   **SCAI Director**: The Director of Student Conduct and Academic Integrity (SCAI) or designee.

xxv.   **Student**: Any person who participates in any course or program of the University, either full-time or part-time, in-person or online, and whether degree-seeking or non-degree seeking. Persons who are academically dismissed or withdraw after allegedly violating the Code, persons who are not officially enrolled at the University for a particular term but who have a continuing relationship with the University, persons who have been notified of being accepted for admission, and persons who are living in the residence halls but are not enrolled at the University are also considered Students.

xxvi.   **Student Organization**: A Student group that is officially registered or recognized by the University, including, but not limited to, political groups, social groups, honor & professional societies, fraternities & sororities, and sport clubs. Membership in a student organization does not affect an individual Student's status with the University or attendance at classes unless the individual Student has been charged and sanctioned independently.

xxvii.   **Title IX Coordinator**: The individual University official with the primary responsibility for coordinating the University's compliance with Title IX. The Deputy Title IX Coordinator is an individual(s) designated by the Title IX Coordinator to support the Title IX Coordinator with respect to the University's efforts to comply with Title IX.

xxviii.   **University**: Florida International University.

xxix.   **University Community**: Any person who is a Student, faculty or staff, any other person currently employed by the University, or third party working on University Premises or within On-Campus Housing (i.e. contractor, vendor), or any participant in a University- sponsored program or activity regardless of the location of the program or activity.

xxx.   **University Official**: Any person employed by the University to perform assigned teaching, research, administrative, professional or other responsibilities (e.g., faculty, staff, administrators, residence hall staff, FIU Police).

xxxi.   **University Premises**: Any building or property owned or controlled by the

4

University within the same reasonably contiguous geographic area and used by the University in direct support of, or in a manner related to, the University's educational purposes, including residence halls; and any building or property that is within or reasonably contiguous to that previously described in this paragraph that is owned by the University, but that is controlled by another person, is frequently used by students, and supports University purposes (e.g., a food or other retail vendor). This definition is designed to conform to the Clery Act definition which can be amended from time to time.

xxxii. **Witness**: A person(s) who has factual knowledge about the incident which forms the basis of the Charge.

xxxiii. **Written Notice**: A notification of the charges against the Respondent sent via email to the Respondent's official University email address. A notification to a Student Organization Respondent sent via email to the official University email address of the Student Organization's President.

## 2. JURISDICTION

i. Jurisdiction under the Code applies to the conduct of any Student or Student Organization that while the student meets the definition of "student" as articulated in 1.xxv. and the student organization meets the definition of "student organization" as articulated in 1.xxvi., regardless of the geographic or electronic location.

ii. A conduct proceeding is not a criminal or judicial proceeding. It is designed to address the Respondent's behavior. Therefore, alleged violations of the Code will be addressed independently of any criminal or judicial proceeding and regardless of whether the criminal charges have been dismissed or reduced to a lesser offense. In extraordinary situations, or at the request of external law enforcement or prosecutor's office, the University may delay its application of this Code.

iii. The Code does not address: Issues related to research misconduct or violations of FIU Regulation 105. Resolutions of issues related to research misconduct must be addressed using the University Research Misconduct policy; or, issues related to professional misconduct. Resolutions of issues related to professional misconduct must be addressed at the school or college level. Violations of FIU Regulation 105 will be addressed in accordance to that Regulation.

iv. Filing Time: Anyone may report an alleged Code violation within ninety (90) calendar days of the incident or obtaining knowledge about the incident, whichever is later. In addition, the SCAI Director may extend the filing time where the delay may be related to issues of victimization or beyond the control of the University.

v. Charging Time: The University must charge an alleged Code violation within one hundred and eighty (180) calendar days of receiving the Incident Report. The SCAI Director may extend the charging time period if deemed necessary to perform a thorough investigation or when the SCAI Director determines that the circumstances warrant an extension to the charging time period.

3. **AUTHORITY**
   i.  The Board of Trustees of Florida International University has been charged with the responsibility of, and authority for, providing a Student conduct system. Authority for Student discipline and the Student conduct system rests with the University President. Although the University President holds the ultimate authority for Student discipline, this authority is delegated to the Chief Student Affairs Officer, who is responsible for implementing the Student disciplinary system. The Chief Student Affairs Officer delegates authority for the execution and implementation of the Code to the SCAI Director.
   ii. The requirements and procedures in the Code may be revised. Those revisions may occur in order to serve the needs of the University Students, faculty and/or staff where safety and security issues so demand. In addition, those revisions may occur in circumstances where, in the University's sole discretion, the requirements and procedures described herein are deemed insufficient to meet the objectives of educating and protecting the members of the University community and/or to respond to changes in the law.
   iii. The Department of Housing and Residential Experience (HRE) may conduct both Summary Resolutions and Administrative Hearings regarding cases involving Conduct violations arising in On-Campus Housing. HRE is not authorized to conduct Student Conduct Committee Hearings. HRE cases may be referred to SCAI.

4. **AMNESTY**
   i.  Medical Amnesty for Alcohol or Drug Use: The University encourages Students to seek medical assistance, but it recognizes that students may be hesitant to make a call or report when they:
       i.  Need immediate medical assistance due to their own use of alcohol/drugs; or
       ii. Witness another Student who needs immediate medical assistance due to alcohol/drugs.

       Thus, students involved in an incident involving alcohol/drugs will not be charged under the Code with consumption if:
       i.  They render or call for immediate medical assistance for themselves and/or others who have participated in or witnessed the incident;
       ii. The Student calling for immediate medical assistance remains at the scene with the person in need of immediate medical assistance until such assistance arrives and then cooperates with such personnel on the scene; and,
       iii. The student timely completes the appropriate educational intervention for the incident as determined by SCAI. Other charges related to the incident (e.g. alcohol distribution, drug distribution, or other non-alcohol/drug charges) may be determined at the discretion of the SCAI Director.

       While student organizations are not eligible for amnesty, calling for medical assistance will be a mitigating factor, while failing to call or removing a person in need of medical assistance will be an aggravating factor at any sanctioning stage.

6

ii. Reporting Amnesty: The University encourages Students to report allegations of the Code, including allegations of FIU Regulation 105, but recognizes that students may be hesitant to make a report when they were using alcohol/drugs. Thus, students involved in an incident involving alcohol/drugs will not be charged under the Code with consumption if they are reporting a violation of the Code or FIU Regulation 105. Any other charge(s) related to the incident may be determined at the discretion of the SCAI Director, but the reporting will be a mitigating factor at any sanctioning stage.

iii. Investigatory Amnesty: As part of an investigatory process, and conditioned on being truthful and providing complete information, a witness or party may be asked to provide information which would self-disclose a Code violation. Without abridging the right of any member of the University community of rights granted under the United States or Florida Constitution and/or any other applicable law including, but not limited to the Fifth Amendment, disclosing a Code violation such as alcohol/drugs use related to an incident being investigated and outlined in the investigation will not be charged under the Code. All other charges related to the incident may be determined at the discretion of the SCAI Director, but additional amnesty may be provided under this provision.

iv. Hazing Amnesty: A student may not be charged under the Code if the Student establishes that, before medical assistance or law enforcement arrived on the scene of a hazing event, the Student rendered aid to the hazing victim and establishes all of the following: i. the Student was present at an event where, as a result of hazing, a person appeared to be in need of immediate medical assistance; and ii. The Student was the first person to call 911 or FIU Police to report the need for immediate medical assistance; and iii. the Student provided their own name, the address where immediate medical assistance was needed, and a description of the medical issue to the 911 operator or FIU Police at the time of the call; and, iv. the Student remained at the scene with the person in need of immediate medical assistance until such medical assistance or law enforcement arrived and that the Student cooperated with such personnel on the scene.

v. Recording Amnesty in compliance with section 1004.097 and 1001.03, Florida Statutes: A student may video or audio record a class lecture for their own personal educational use, in connection with a complaint to the University, or as evidence in, or in preparation for a criminal or civil proceeding. A recorded lecture may not be published without the consent of the lecturer.

vi. Amnesty at the SCAI Director's Discretion: The SCAI Director may grant amnesty from proceedings within the conduct system, contingent on a student providing complete and accurate information during an investigation or conduct proceeding.

5. **CONDUCT VIOLATIONS** The following conduct is prohibited by this Code. These violations are included in each section below and need not be cited separately. Lack of familiarity with University policy is not a defense to a violation of this Code. Unless specifically noted, intent is not a required element to establish a policy violation. Additionally, intoxication or impairment caused by use or consumption of alcohol, drugs, or other substances is not a defense to a violation of this Code. The following conduct

violations or any attempt to violate the Code will be used in charging all Students or Student Organizations.

i. **Any** conduct prohibited by FIU Regulation 105 – Sexual Harassment (Title IX) and Sexual Misconduct or FIU Regulation 106 – Nondiscrimination, Harassment and Retaliation.

ii. **Assisting:** Any affirmative act which aids, attempts, promotes, conceals, or facilitates any act prohibited by this Code.

iii. **Attempt:** Attempt or intent to commit any violation outlined in the Code.

iv. **Alcohol:** Students who choose to drink will be held fully responsible for their behavior while under the influence of alcohol. Loss of control due to intoxication does not excuse or justify a violation of the state law, University Policy, or the rights of others.

    i. Possession, use and/or consumption of alcohol when under the legal drinking age as provided by Florida Law.

    ii. Dispensing, selling or supplying alcoholic beverages to an individual who is under the legal drinking age as provided by Florida Law.

    iii. Any violations of FIU Policy governing alcohol usage. See, Regulation FIU-2505 Alcoholic Beverages.

    iv. Use and/or possession of beer kegs and party balls or other common sources of alcohol.

    v. Possession of open containers of alcohol or consumption of alcoholic beverages in public areas,  including but not limited to balconies, courtyards or hallways.

    vi. Public intoxication (e.g., appearing in a state of intoxication) and/or excessive drinking.

    vii. Use and/or possession of devices designed for the rapid or excessive consumption of alcohol, including, but not limited to, funnels, ice luges, and beer bongs.

    viii. Hosting or sponsoring a gathering where underage individuals are drinking alcohol.

    ix. Unlawful manufacture, trade, and/or intent to sell alcohol.

    x. Reporting to classes, work, or related assignments "under the influence" of alcohol.

    xi. Control or operation of any mode of transportation while impaired by alcohol.

    xii. Violating any other University Policy while under the influence of alcohol.

v. **Animals:** The University allows individuals to bring animals on University Premises in accordance with federal laws. A service animal is permitted on campus grounds and within University buildings, including the University housing assignment provided to an individual with a disability. An emotional support animal is permitted on campus to accompany an individual into their University assigned residence in accordance with the U.S. Department of Housing and Urban Development.

8

      i.     Failing to obtain approval from Housing and the Disability Resource Center (DRC) for the Student's emotional support animal (as defined by federal law) in a residence hall.

     ii.     Having an approved emotional support animal beyond authorized areas (i.e., within the residence halls and immediate access to outdoor areas).

   iii.     Failing to register the Student's service animal (as defined by federal law) with the DRC if the Student resides on campus.

   iv.     Failing to properly control a pet, service animal, and/or emotional support animal such that the animal is disruptive, is not housebroken, or poses a safety or health concern.

     v.     Bringing pet dogs, cats, or other animals (except non-dangerous fish) to campus or being in possession of stray animals.

vi.    **Bribery:** Knowingly making an offer, gift, receipt, or solicitation of money, materials, goods, services or anything of value by the Student or others for the purpose of procuring or providing an advantage to which they are not otherwise legally entitled.

vii.   **Computer Misuse**

     i.     Unauthorized access, entry or use of a computer, computer system, network, software, password, account or data.

     ii.     Unauthorized alteration or degradation of computer equipment, software, network, data or system performance.

   iii.     Unauthorized copying or distribution of computer software or data.

   iv.     Unauthorized use, taking, or theft of University computer resources for commercial purposes or personal financial or other gain. This includes, but is not limited to, advertising a product or service on personal web pages, fund-raising or advertising on behalf of unsanctioned non-University organizations, publicizing of unsanctioned non-University activities, resale of University resources to any non-University individuals or organizations, and the unauthorized use of the University's name or logos. Use of the University's network for any of these purposes, even if the user is using their own personal computer, constitutes an offense.

     v.     Allowing another person to use one's FIU username and password.

     vi.     Any other violation of the University computer use and web page policies. The complete policies are available at https://security.fiu.edu/governance/#policies.The website also contains the civil and criminal penalties for distributing, without authority, copyrighted materials (including unauthorized peer-to peer file sharing) and the penalties for violating federal copyright law.

   vii.     Unauthorized distribution or downloading of copyrighted materials, including but not limited to, unauthorized peer-to-peer file sharing. This is a violation whether the user is using their own personal computer or the University's information technology system for the unauthorized distributions.

viii.   **Disruptive Conduct**

     i.     Behavior that substantially and materially disrupts, disturbs, impairs, interferes with or obstructs the orderly conduct, processes and functions of

the University or the rights of other members of the University community.

ii. Behavior that substantially and materially disrupts, disturbs, impairs, interferes with or obstructs the orderly conduct, processes, and functions of the classroom, or laboratory and/or immediate surrounding areas. This includes interfering with the academic mission of the University or individual classroom or interfering with a faculty member or instructor's role to carry out the normal academic or educational functions of their classroom laboratory and/or immediate surrounding areas.

iii. Behavior that substantially and materially disrupts, disturbs, impairs, interferes with or obstructs the Student Conduct process, including, but not limited to, harassment and/or intimidation of any member of the Student Conduct Committee, Witness or University personnel before, during or after a proceeding, or attempting to coerce or influence any person(s) in order to discourage their participation in any Student Conduct proceeding.

iv. Any behavior that substantially and materially disturbs the peace.

ix. **Drugs:** Students who choose to use illegal drugs or use prescription drugs without a prescription will be held fully responsible for their behavior while under the influence. Loss of control due to being under the influence does not excuse or justify a violation of the state law, University Policy, or the rights of others.

i. Possession, use, the manufacture, creation and/or the cultivation of illegal drugs or prescription drugs without a prescription. Inhalable or ingestible substances (e.g., nitrous oxide, glue, paint) that will alter a Student's mental state.

ii. Distribute, dispense, deliver, trade, sell and/or attempt to sell drugs or prescription drugs.

iii. In possession and/or use of drug paraphernalia (including, but not limited, to bongs, pipes, "hookahs," spoofs, rolling papers, blunts, small plastic baggies).

iv. Misuse and/or abuse of prescription drugs.

v. Control or operation of any mode of transportation while under the influence of any controlled substance or illegal drugs.

x. **Endangerment**

i. Occurs when one intentionally or recklessly (a) causes bodily harm to another person; (b) attempts to cause bodily harm to another person; or (c) puts another in fear of imminent bodily harm. No Student may knowingly or recklessly touch any other person without that person's consent. Punching, slapping, scratching, or otherwise striking any person with any part of one's body or with any object constitutes physical violence.

ii. Engage in any action(s) that endangers the health, safety or welfare of others.

xi. **Failure to Comply**

i. Failure to comply with a request or directive of a University Official or non-University law enforcement official in the performance of their duty.

ii. Failure to comply with the final decision and sanctions rendered by a Student Conduct hearing or appellate body.

10

      iii.    Failure to comply when a University Official requests to identify oneself and/or produce FIU identification.

xii.  **Falsification/Fraudulent Activity/False Testimony**

      i.    Withholding relevant information from any Hearing Body, University Officials, non-University law enforcement officers, faculty and/or staff.

      ii.    Providing false or misleading information (whether oral or written) to any Hearing Body, University Officials, non-University law enforcement officers, faculty and/or staff. A good-faith report of prohibited conduct does not constitute a Code violation.

      iii.    Misuse, reproduction, alteration or forgery of any identification, documents, keys or property.

      iv.    Permitting another person to use one's identification information.

      v.    Misuse or possession of false identification information.

      vi.    Purporting to act on behalf of another person, group or the University without authorization or prior consent.

      vii.    Providing a worthless check, money order or using a fraudulent credit card or a credit card without authorization.

      viii.    Any other acts of falsification/fraud/false testimony or misrepresentation.

xiii.  **Fire and Safety**

      i.    Inappropriate activation of any emergency warning equipment or the false reporting of any emergency.

      ii.    Removing, damaging, interfering and/or tampering with fire safety or other emergency warning equipment, including smoke detectors, sprinklers and/or fire alarms. Items may not be hung from or block sprinklers or smoke detectors.

      iii.    Failure to evacuate University Premises or On-Campus Housing facility/unit when a fire alarm is activated.

      iv.    Engaging in action(s) which cause or attempts to cause the release of chemicals or substances that can cause harm to another person's health or would start a fire or explosion.

xiv.  **Gambling**

      i.    Soliciting, placing or accepting a bet on any high school, intercollegiate or professional athletic contest on University Premises, On-Campus Housing, or at a University or Student Organization-sponsored activity or event.

      ii.    Soliciting, facilitating or participating in any illegal gambling, bookmaking or illegal betting whether through a bookmaker, a parlay card, a pool or any other method of organized gambling on University Premises, On-Campus Housing, or at a University or Student Organization-sponsored activity or event.

xv.  **Harassment**

Severe or pervasive interactions aimed towards another or entity which is by objective measure threatening, abusive, or severely annoying and that is beyond the scope of free speech and which is not covered by FIU Regulation 105.

xvi.  **Hazing**

      i.    Any group or individual action or activity that inflicts or intends to inflict physical or mental harm or otherwise endanger or discomfort which may

11

demean, disgrace and/or degrade any person, regardless of location, intent or consent of participant(s). Taking into consideration the aforementioned description, hazing includes, but is not limited to:

i. Interference with a Student's academic performance;

ii. Forced consumption of any food, alcohol, controlled substances, drugs or any other substance;

iii. Forced physical activity (e.g., calisthenics, line-ups, walking or marching in formation);

iv. Deprivation of food, water or sleep;

v. Not permitting individuals to speak for extended periods of time and/or forced exclusion from social contact;

vi. Engaging in activities which involve compelling an individual or group of individuals to remain at a certain location or transporting anyone anywhere within or outside the University (e.g., road trips, kidnaps, drops);

vii. Physical or mental abuse of any nature, including physical discomfort;

viii. Sexual misconduct of any nature;

ix. Theft, defacement or destruction of private or public property;

x. Compelling the performance of personal chores or errands;

xi. Verbal abuse or degradation, including yelling or demands;

xii. Assigning or endorsing pranks (e.g., stealing, harassing other organizations);

xiii. Conducting activities designed to deceive or convince a member that they will not be initiated or that they will be hurt;

xiv. Compelling scavenger hunts, treasure hunts, quests, road trips, big brother/little brother hunts, big sister/little sister hunts;

xv. Any action or threatened action that would subject the individual to embarrassment, humiliation or mental distress, including the use of demeaning names; or

xvi. Any other acts or attempted acts which would constitute hazing pursuant to Section 1006.63 of the Florida Statutes.

ii. The following shall not constitute a defense to Hazing:

i. The consent of the victim was obtained;

ii. The conduct or activities that resulted in death or injury to the victim was not part of any official organizational event or otherwise sanctioned or approved by a Student Organization or group; or

iii. The conduct or activity that resulted in death or injury to the victim was not done as a condition or membership into a Student Organization or group.

xvii. **Motorcycles, Bicycles, Pocket Bikes, Rollerblades, or Skateboards**
Failure to comply with FIU Regulation 115 Skateboards, Skates, Scooters, Ripstiks, Hoverboards and other similar devices and high-risk activities on University Premises or in On-Campus Housing.

xviii. **Obstruction**

Taking action, individually or working with others, which the Respondent knew or should have known would impede an investigation by the University into possible violations of the Code committed by a Student and/or Student Organization, including failing to participate in a University investigation or proceeding if not the Respondent.

xix. **On-Campus Housing Violations**

Violation(s) of any HRE policies published in hard copy or available electronically via the HRE website (https://housing.fiu.edu/resident-resources/housing-policies-standards-of-conduct/index.html).

xx. **Personal Abuse**

i. Verbal or written abuse, threats, intimidation, and/or Coercion that objectively endangers the health, safety or well-being of others and which is not covered by FIU Regulation 105. Using fighting words or statements which reasonably endanger the health and safety of any person that are not protected speech may result in University action. Conduct directed at any person, including a member of the University community, which is intended to, or would reasonably, cause fear, distress, injury or intimidation to a person, or would place a reasonable person in fear of injury or death.

ii. Conduct that is based on race, color, religion, ethnicity, national origin, disability, age, marital status, genetic information, veteran status or any group/class protected by federal or Florida law sufficiently severe, pervasive or persistent (when viewed both from a reasonable person in similar circumstances and the person in question) that a person would be adversely affected to a degree that interferes with or limits their ability to participate in or benefit from the services, activities or opportunities offered by the University.

iii. Interference with the freedom of another person or group to move about in a lawful manner.

xxi. **Promotions/Posting**

i. Solicitation of commercial speech on campus, including On-Campus Housing facilities, without prior approval from the appropriate University Officials. This includes, but is not limited to, the distribution of any forms of promotional/informational commercial speech material on University Premises or On-Campus Housing or objects (e.g., motor vehicles).

ii. Posting of flyers, posters, banners, cards or any promotional/informational material on University Premises or On-Campus Housing, including, but not limited to, the exterior and interior of On-Campus Housing facilities, buildings, trees, walls, sidewalks, vehicles, windows, stairwells, stairs, display cases, vending machines, doors, classrooms, departmental and unauthorized bulletin boards, railings, elevators, bathrooms, art and/or sculptures without prior approval from the appropriate University Officials.

xxii. **Retaliation**

13

  i. Acts or words taken against an individual because of the individual's participation in a protected activity that would discourage a reasonable person from engaging in protected activity. Protected activity includes an individual's good faith:

    i. Participation in the reporting, investigation, and/or resolution of an alleged violation of this Code; and/or

    ii. Opposition to policies, practices and/or actions that the individual reasonably believes are in violation of the Code. Retaliation may include intimidation, threats, coercion, physical harm and/or adverse employment or educational actions. Retaliation may be found even when an underlying report made in good faith was not substantiated. Retaliation may be committed by the Respondent, the Reporting Party, or any other individual or group of individuals.

xxiii. **Smoking and Use of Tobacco-Related Products**

  i. Failure to comply with FIU Regulation 113 Smoke, Vape-Free, and Tobacco-Free Campus by smoking and/or vaping in or on any University Premises or On-Campus Housing. Smoking means possession of a lighted cigarette, cigar, pipe, water-pipe or hookah, or the use of an electronic cigarette, cigar, pipe, vape or any other device intended to simulate smoked tobacco. Vaping means to inhale or exhale vapor produced by a vapor-generating electronic device or to possess a vapor-generating electronic device while that device is actively employing an electronic, chemical, or mechanical means designed to produce vapor or aerosol from a nicotine product or any other substance.

  ii. Use of smokeless tobacco, snuff, chewing tobacco, smokeless pouches and any other form of loose-leaf or smokeless tobacco.

xxiv. **Social Host Responsibility**

Allowing, permitting, or providing an opportunity for a guest to violate University policy.

xxv. **Stalking**

Engaging in a course of conduct directed at a specific person, not covered under FIU Regulation 105, that would cause a reasonable person to (a) fear for the person's safety or the safety of others; or (b) suffer substantial emotional distress. For the purposes of this conduct violation, course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device or means, follows, monitors, observes, surveils, threatens or communicates to or about a person, or interferes with a person's property.

xxvi. **Student Organization Policies**

  i. Members of the Student Organization acting together to violate University Policy.

  ii. More than one Student working together to impede an investigation by the University into possible violations of the Code committed by a Student Organization.

      iii. Acting to protect from official action one or more alleged individual offenders who are members, former members or guests of the Student Organization.

      iv. Leaders of the Student Organization who fail to report and/or take reasonable action against guests and/or members responsible for alleged violations.

      v. Violation(s) of any Campus Life/Fraternity and Sorority Life/Sports Club Policies published in hard copy or available electronically via the appropriate website. See https://dasa.fiu.edu/all-departments/campus-life/, https://dasa.fiu.edu/all-departments/fraternity-sorority-life/, or https://dasa.fiu.edu/all-departments/wellness-recreation-centers/. .

xxvii. **Theft and Theft-Related Conduct**

      i. Taking, or use of, the property or services of another person or of the University without prior written consent or authorization of the person or of the appropriate authority.

      ii. Possession and/or sale of property or services of another person or of the University without prior written consent or authorization.

xxviii. **Trespassing/Unauthorized Use**

      i. Unauthorized presence in or unauthorized use of University Premises or On-Campus Housing, facility or restricted area.

      ii. Willfully entering an on-campus restroom or changing facility designated for the opposite sex and refusing to depart when directed to do so by a University Official, except under the following circumstances:

        i. to accompany a person of the opposite sex for the purpose of assisting or chaperoning a child under the age of 12, an elderly person, or a person with a disability;

        ii. for law enforcement or governmental regulatory purposes;

        iii. for the purpose of rendering emergency medical assistance or to intervene in any other emergency situation where the health or safety of another person is at risk;

        iv. for custodial, maintenance, or inspection purposes, provided that the restroom or changing facility is not in use; or

        v. where a designated restroom or changing facility is out of order or under repair and the restroom or changing facility designated for the opposite sex contains no person of the opposite sex.

        vi. for purposes of section xxviii.ii. only, "sex" is defined by section 553.865, Florida Statutes.

xxix. **Vandalism/Damage/Littering**

      i. Damage, destruction or defacing property of another person, group or the University.

      ii. Dispersing litter in any form on University grounds or facilities, including, but not limited to, cigarette butts, flyers, cans, and bottles.

xxx. **Weapons, Firearms, Explosives**

      i. Possession, storage or use of firearms, except as provided below, explosives, ammunition or other weapons or dangerous articles or substances, including, but not limited to tasers, stun guns, switchblade

knives and non-lethal weapons such as fireworks, paintball guns, air guns, BB guns, any dangerous chemical or biological agents, corrosive agents, compressed gas, sling shots, brass knuckles, Chinese stars, or any other item used as a weapon.

    i.    In accordance with Florida Statutes section 790.115, possession of firearms on University Premises or On-Campus Housing (except as provided by Florida Statutes section 790.25(5)).

    ii.    Possession of a concealed weapon or firearm on University Premises or On-Campus Housing even if the Student possesses a concealed weapon license.

ii.    Notwithstanding the foregoing, weapons, including non-functioning antique display weapons, may be used for classroom instructional purposes or other University sanctioned activities (e.g., firearms under the direct supervision of ROTC, a diver's knife for a scuba divers' class) but only with prior approval by the appropriate University Official.

iii.    Threat of the use of a weapon or weapons that could, or would, cause distress or injury to a member or members of the University community or damage to University Premises or On-Campus Housing.

xxxi.  **Other Violations**

    i.    Aids or abets another in any violation of federal law, state law, local ordinance, and/or Policy not already listed above.

    ii.    Violations of federal and/or state laws, local ordinance, and/or Policy not already listed above.

## 6. ACADEMIC MISCONDUCT VIOLATIONS

  i.  **Academic Dishonesty**

    i.    Failing to comply with examination policies or the instructions of an examination proctor.

    ii.    In general, by any act or omission not specifically mentioned in the Code and which is outside the customary scope of preparing and completing academic assignments and/or contrary to the stated policies concerning academic integrity.

  ii.  **Bribery**

The offering of money or any item or service to a member of the faculty, staff, administration, Student or any other person in order to commit academic misconduct.

  iii.  **Cheating**

    i.    The unauthorized access or use of any materials, information, study aids, automated tools, or assistance from another person on any academic assignment or exercise.

    ii.    Assisting another Student in the unauthorized access or use of any materials, information, study aids, or automated tools.

    iii.    Having a substitute complete any academic assignment or completing an academic assignment for someone else, either paid or unpaid.

  iv.  **Commercial Use**

16

The selling of course material to another person, Student, and/or uploading course material to a third-party vendor without authorization or without the express written permission of the University and the Instructor. Course materials include but are not limited to class notes, Instructor's PowerPoints, tests, quizzes, labs, instruction sheets, homework, study guides and handouts.

    v. **Complicity**
The planning or acting with one or more fellow Students, any member of the faculty, staff or administration, or any other person to commit any form of academic misconduct together.

    vi. **Falsification of Records**
The tampering with or altering in any way of any academic record used or maintained by the University.

    vii. **Misrepresentation**
        i. Providing false or misleading information to a member of the faculty, staff, administration, or an outside agency to gain academic advantage for oneself or another.
        ii. To misrepresent or in other ways interfere with the investigation of a charge of academic misconduct.
        iii. Falsifying, altering, or misrepresenting any information within the student's own course work to gain academic advantage for oneself or another.

    viii. **Multiple Submission**
Submitting the same or substantially the same academic work (including oral presentations) for credit more than once. Multiple submissions shall not include situations where the prior written approval by the instructor in the current course is given to the student to use a prior academic work or endeavor.

    ix. **Plagiarism**
        i. The submission of any work authored by another person or generated by an automated tool without proper acknowledgement of the source, whether that material is paraphrased or copied in verbatim or near-verbatim form.
        ii. Assisting another Student in the submission of any work authored by another person or generated by an automated tool without proper acknowledgement of the source, whether that material is paraphrased or copied in verbatim or near-verbatim form.

7. **INVESTIGATION AND PRE-ADJUDICATION PROCEDURES**
    i. **Initiating Charges for Conduct Violations**: Any person or entity (including University departments, offices, officials, community members) may report an alleged violation(s) of the Code for review by SCAI by:
        i. Submitting a police report that has been filed with any police department;
        ii. Providing a SCAI incident report (see https://report.fiu.edu/ for report) along with accompanying documentation; or
        iii. Making an oral report to SCAI.
    ii. **Initiating Charges for Academic Misconduct Violations**: Any person or entity

(including University departments, offices, officials, community members) may report an alleged violation(s) of the Code for review by the SCAI by:

 i. Submitting the alleged violation(s) through the Academic Misconduct Report Form (AMR) along with any accompanying documentation (see https://report.fiu.edu/ for report). Instructors are encouraged to discuss the allegations with the Student prior to referral to SCAI.

 ii. If a Student, staff member, or a person not affiliated with the University observes a Student committing an Academic Misconduct violation, they may report the alleged violation to SCAI via the standard incident reporting form (see https://report.fiu.edu/ for report). SCAI will then communicate with the appropriate faculty member, chair, or College/School Dean.

 iii. All matters relating to Academic Misconduct among undergraduate, graduate, and professional Students are referred to the SCAI Director or designee. In matters where there is a conflict of interest with the SCAI Director, the case will be referred to the Chief Student Affairs Officer or designee.

iii. **Preliminary Review**: The SCAI Director will determine, at their discretion, whether further fact-finding is needed and whether there is sufficient information to file charges or refer to another University office regardless of the participation of any party in the proceedings.

 i. Upon receiving an alleged violation of Academic Misconduct, the SCAI Director may review relevant information and consult with relevant parties regarding the incident in question. In addition, Instructors can request an intake meeting with SCAI staff to review allegations, the Charges, possible Sanctions, and to learn about the Student conduct process, and any available forms of resolution.

iv. **Interim Measures**: Until Final Agency Action or there is a such a change in circumstances that the decision-maker for each action below no longer supports such an action, the following interim measures may be implemented as follows:

 i. No-Contact Directive: In cases involving allegations of, hazing, personal abuse, retaliation, stalking, or other menacing activity or concerning behavior, the SCAI Director, after making a reasonable effort to meet with the Respondent if appropriate to do so, may issue a No-Contact Directive.

 ii. Restriction of Privilege or Access Directive: In cases involving allegations of hazing, personal abuse, retaliation, stalking, trespassing, or other menacing activity or concerning behavior, the SCAI Director, after making a reasonable effort to meet with the Respondent if appropriate to do so, may issue a Restriction of Privileges or Access Directive.

 iii. Interim Suspension

  i. Where the Chief Student Affairs Officer or designee determines that the health, safety or welfare of the University community are in jeopardy or in danger, an interim (temporary) suspension will be imposed. This includes, but is not limited to, physical assault,

18

hazing, possession of a firearm or explosives, illegal drug possession and other acts of a similar nature. A Respondent under Interim Suspension is considered not in good standing with the University, resulting in applicable restrictions on privileges and/or activities. The Respondent may neither attend nor participate in any classes, including any online components, during this time. The Respondent is also banned from being on or in any University Premises and/or On-Campus Housing, and from participation in any University- sponsored/related event or activity, except with the permission of the SCAI Director. A Student Organization may neither attend nor participate in any University-sponsored/related event or activity, use University space, register/host gatherings and events, except with the permission of the SCAI Director.

ii. The Respondent may petition the Student Conduct Committee (SCC), in writing, for a review of the decision; the University will submit to the SCC, in writing, relevant information related to the decision to impose an interim suspension. The SCC shall meet to consider the petition as soon as possible, but typically no later than five business days after it receives the petition. If the SCC determines that the suspension was improper or is no longer necessary, it shall lift the suspension immediately and the underlying matter shall proceed. The SCC may implement any alternative interim measures if it lifts the interim suspension.

iii. The Respondent's transcript will remain notated during the interim suspension.

iv. If a Respondent's privileges are temporarily revoked through an Interim Suspension and the Respondent is subsequently found not responsible for the violation, the University must, to the extent possible:

  i. Correct any record of the change in enrollment status in the Respondent's permanent records and reports in a manner compliant with state and federal laws; and

  ii. Refund to the Respondent a pro rata portion of any charges for tuition, and out-of-state fees, as appropriate, relating to the temporary revocation or suspension which affected the Respondent's ability to attend classes for more than ten (10) school days.

v. **Investigations**: The SCAI Director retains the discretion to determine whether an investigation should be conducted, and the scope of such investigation based on the alleged violations under the Code. The investigation will be a neutral fact-finding process used to determine if there is sufficient information to warrant action by the University. If the SCAI Director directs an investigation to another office to act on behalf of SCAI, including the Department of Housing and Residential Experience or the Office of Civil Rights Compliance and Accessibility (CRCA), the Director of such office, or designee, shall conduct the

19

investigation in accordance with the Code and relevant processes and procedures, so long as such procedures do not conflict with this Code or applicable University Policy which has jurisdiction over the reported behavior. For cases in which there is an overlap of charges between the Code and FIU Regulation 105, a joint investigation will commence, and the details of the Code investigation will be included in the FIU Regulation 105 final report or considered as part of the informal resolution. The Code behaviors will cede to adjudication and appeal under the process set forth in FIU Regulation 105. In cases where conduct involves both potential Conduct and Academic Misconduct violations, the Hearing Officer or Hearing Body has the authority to handle both matters simultaneously. If a Student is found Responsible for simultaneous Conduct and Academic Misconduct violations, sanctions from both processes may be imposed.

vi. **Charge Letter**: The Respondent will be given a written notice of the Charges. The Charge Letter will include the following:

    i. Notice of the charge(s), including specific code section(s) which constitutes the alleged violation(s) of the Code, an allegations statement and any other detail in order to prepare for a Student Conduct proceeding, including the process to be used in determining whether a violation has occurred and associated rights; and

    ii. Information regarding next steps, including the date, time, and location of the disciplinary proceeding.

vii. **Joint Hearings**: Cases that present common questions of conduct or fact and that would come before a panel of like composition may be joined for hearing.

    i. For a joint hearing, the individual who conducted the information sessions must affirm, in writing, to the Hearing Officer that each Respondent performed acts sufficiently similar that the facts presented in evidence would not differ materially from one Respondent to another. In such case, the Hearing Officer may order joinder of such cases for hearing.

    ii. Any Respondent, whose case is joined may request, in writing, to the Hearing Officer to be excluded from the joint hearing on the ground that (i) they are not charged with the same offense, at the same time and place, or (ii) that the facts relevant to them would differ materially from the facts relevant to the Respondent(s). The Hearing Officer's decision regarding whether any requesting Respondent be severed from the joint hearing is final.

    iii. All decisions regarding responsibility under this Code, and any appliable sanctions or remedies will be rendered individually, and each Respondent remains entitled to their own advisor.

viii. **Information Session**: An information session is designed to provide the Respondent with information about the adjudication process, as well as giving access to the information supporting the charge(s) available at that time. The information session is not a disciplinary proceeding but may transition to such a disciplinary proceeding if the Respondent waives any applicable disciplinary proceeding rights not met in order to accept a Summary Resolution.

20

i.     Subsequent to the information session, the Hearing Officer may conduct further fact-finding regarding the incident that is subject to the charge. This information will be communicated to the Respondent prior to the hearing or at a subsequent meeting before a hearing.

ii.    If a Respondent fails to attend a scheduled information session, the Respondent will be deemed to have waived their right to an information session. Under those circumstances, a hearing will be scheduled. Failure to attend an information session will result in the Hearing Officer determining the type of hearing. The hearing type will be determined based on the severity of the possible sanctions (e.g., suspension/expulsion cases may be referred to the Student Conduct Committee).

iii.   If the Respondent fails to attend the information session, the Hearing Officer may place a hold/service indicator on the Respondent's record until the conclusion of the hearing. If sanctions are imposed as a result of the hearing, the hold/service indicator will be retained until the Respondent fulfills all of the sanctions.

ix.   **Student Academic Status Pending the Code Process**: The Student's academic status will remain unchanged pending the outcome of the Code process, except where the Chief Student Affairs Officer or designee has implemented an interim suspension. When a final grade for a course may be involved, a grade of IN should be assigned, pending the University's final decision in the matter. A Respondent's ability to register for future semesters may be temporarily placed on hold.

8. **RESOLUTION OPTIONS**
   A Respondent is entitled to a resolution of any alleged violation of the Code through a disciplinary proceeding unless waived as set forth below. Two (2) types of resolution options are provided by the Code.

   i.   **Summary Resolution**

   i.   A summary resolution is available when the Respondent waives the right to a hearing, any applicable disciplinary proceeding rights not met, and requests that the Hearing Officer conducting the information session determine the findings and sanctions if applicable. The Hearing Officer reserves the right to conduct fact-finding to make an informed decision.

   ii.  The following apply to a summary resolution:

   i.    The meeting(s) will not be recorded.

   ii.   The written decision will serve as the official record of the Summary Resolution.

   iii.  The written decision will be sent to the Respondent within fourteen (14) Business Days from the date of the Summary Resolution. For Academic Misconduct violations, the written decision will also be sent to the Instructor.

   iii. If the Respondent does not choose the Summary Resolution (or the option is unavailable), the Respondent may indicate their preference for one of the two (2) types of hearings.

21

ii.   **Hearings**: Two hearing types are available under the Code: an Administrative Hearing, or a Student Conduct Committee (SCC) hearing. All procedures described in the Hearing Procedures section apply to these types of hearings.

  i.   Administrative Hearing - Conducted by a Hearing Officer who serves as the Hearing Body.

  ii.   SCC Hearing – Conducted by a committee which serves as the Hearing Body. SCC committees for Conduct violations consist of two (2) Students, one (1) faculty or staff member, and a non-voting Hearing Officer. SCC committees for Academic Misconduct violations consist of three (3) Students, two (2) full-time faculty members, and a non-voting Hearing Officer. The non-voting Hearing Officer will moderate the hearing.

  iii.   For SCC Hearings, members of any particular committee will vary, but will come from a pool of qualified faculty, staff and Students. Faculty members can be recommended annually by the Faculty Senate. Undergraduate, graduate, and professional Student members will be recruited and selected through SCAI's formal SCC recruitment and selection process. All members of the SCC will be trained by SCAI. In cases where the Respondent is an undergraduate, every effort will be made to select undergraduate student representatives for the SCC. In cases where the Respondent is a graduate or professional student, every effort will be made to select graduate or professional student and faculty representatives for the SCC. For Academic Misconduct violations, the committee must include two full-time faculty members. For cases in which there is an overlap of charges under only the Code (Academic Misconduct and a non-Regulation FIU-105 violation), the Hearing Body shall meet the requirements of the Academic Misconduct hearing.

  iv.   For cases in which there is an overlap of charges between the Code and Regulation FIU-105, the Code behaviors will cede the adjudication processes under that Regulation.

  v.   The SCAI Director retains the discretion to ultimately determine which hearing forum is appropriate.

  vi.   All hearing(s) will be conducted in private or in accordance with applicable law.

9.   **HEARING NOTIFICATION AND INFORMATION EXCHANGE**

  i.   **Scheduling**: Hearings may be scheduled during class periods. Every effort will be made to avoid a class conflict; however, due to availability of persons involved in the hearing and meeting room, it may not be possible.

  ii.   **Hearing Notice**: The notice of a hearing, including date, time and location will be sent to the official University email address of the Respondent, Complainant (if applicable), or President of the Student Organization, at least seven (7) Business Days prior to the hearing unless waived by the Respondent. The Instructor will also be notified in Academic Misconduct cases. The Hearing Officer has the discretion to provide notice through additional means (e.g.,

overnight or hand delivery). The delivery notification of the hearing notice through the official University email will constitute full and adequate notice under the Code.

    i. The notice will include the names of witnesses to be called by the University and a list of information to be used in the hearing, which may be different from what was presented in the information session or subsequent meetings.

    ii. The notice will also indicate the name(s) of the Hearing Body member(s) if known at the time, but will be provided before the start of the hearing.

iii. **Witnesses and Information**

    i. At least five (5) business days prior to the hearing the University will provide the Respondent the names of all known witnesses and all information related to the allegation, including inculpatory and exculpatory information, subject to redaction in accordance with federal and state law.

    ii. At least five (5) business days prior to the hearing the Respondent must provide the names of all known witnesses and all information to be used in the hearing. Acceptance or denial of witnesses and/or information, based on relevancy, is within the discretion of the Hearing Officer, but the University will not consider polygraph reports.

    iii. Character witnesses or witnesses to other incidents outside the specific incident in question will not be allowed to testify at a hearing. The Respondent may provide the Hearing Body with character witness statements (which will only be considered during the sanctioning phase, if applicable).

    iv. The Respondent is responsible for contacting and notifying the additional witnesses they wish to call for the hearing.

    v. The proceedings shall not be delayed due to scheduling conflicts of witnesses. Failure of any witness to appear shall not require a delay or affect the validity of the proceedings. If called witnesses do not appear, their written statements, if they exist, will be considered by the Hearing Body. Witnesses can appear in person or by contemporaneous alternative means (e.g., Zoom, phone).

    vi. The Hearing Officer has the discretion to limit the number of witnesses whose testimony may be duplicative, redundant or not in dispute.

    vii. The Hearing Officer may place limits on the length of testimony and also may advise to the scope, direction or tone of questioning.

    viii. The Instructor of the course in which the alleged Academic Misconduct violation(s) has occurred will always be requested to attend the hearing. The Instructor is strongly encouraged to participate in the hearing procedure.

iv. **Challenging a Member of the Hearing Body/Change of a Hearing Body Member**

i. The Respondent may challenge the inclusion of any member at least three (3) business days prior to the scheduled hearing. The challenge must be in writing and must show actual bias (such as a conflict of interest, animosity, pressure or influence) that would preclude a fair and impartial hearing. The Hearing Officer will determine whether to grant such challenge in their discretion, and such decision is final and not appealable.

ii. If a Hearing Body member is unable to serve due to an emergency or unforeseeable occurrence, the Hearing Officer will appoint a new hearing body member prior to the scheduled hearing and notify the Respondent as soon as possible. The Respondent may challenge the inclusion of this member at the time of the hearing. The challenge must be on the basis outlined above.

v. **Request for a Postponement**: Any request to postpone a hearing must be submitted in writing or by email and must be received by the SCAI Director at least two (2) business days prior to the hearing. The request must state the reason(s) for the postponement. The granting of such requests shall be at the discretion of the SCAI Director. The University is not required to postpone a proceeding pending the outcome of a criminal prosecution. The University may postpone the hearing, at any time, for extraordinary situations (e.g. hurricane, emergency personnel matters).

## 10. ADVISOR FOR THE RESPONDENT

i. The Respondent may be accompanied by an advisor of their choosing and at their expense at any time during the Code process.

ii. It is the responsibility of the Respondent to make appropriate arrangements for the advisor to attend the proceeding. The proceedings shall not be delayed due to scheduling conflicts of the chosen advisor. If the advisor is an attorney, the attorney must comply with the same restrictions imposed on any other advisor.

iii. The Advisor may be present to advise the Respondent and may participate in all aspects of the proceeding but shall not testify for the Respondent.

iv. Although the Respondent may consult with their Advisor during the hearing, this consultation must take place in a manner that does not disrupt the proceedings.

v. The Advisor chosen by the Respondent cannot be a witness in the matter.

vi. SCAI can provide the Respondent with a list of Advisors who can provide assistance in preparing a response to the reported Code violation.

## 11. DUE PROCESS RIGHTS OF THE RESPONDENT:

The Respondent has the following rights:

i. Reasonable, written notice of the Code charge(s) and the allegations upon which the charge(s) is/are based.

ii. A presumption that no violation occurred.

iii. A fair and impartial hearing.

iv. The right to be accompanied by an Advisor of their choice and expense at any time during the Code process.

v. The opportunity to review all relevant information or evidence to be used in

24

the hearing prior to the hearing.

vi. The ability to participate in the Student Conduct hearing either physically or by contemporaneous alternative means (e.g., Zoom, phone).

vii. The opportunity to present, or have your advisor present relevant witnesses and information at the hearing.

viii. The opportunity to question, or have your advisor question witnesses in accordance with the Hearing Procedures.

ix. Not to provide self-incriminating testimony. Invoking the right against self-incrimination will not be considered as a negative factor in the decision of the Hearing Officer or Hearing Body.

x. Receive notification of the decision of the Hearing Body in writing within fourteen (14) Business Days of the hearing.

xi. Appeal the decision via the process established by the University.

## 12. RIGHTS OF THE COMPLAINANT

i. Reasonable, written notice of the Code charge(s) and the allegations upon which the charge(s) is/are based.

ii. The ability to participate in the Student Conduct hearing either physically or by contemporaneous alternative means (e.g., Zoom, phone).

iii. Receive notification of the decision of the Hearing Body in writing within fourteen (14) Business Days of the hearing.

## 13. PRINCIPLES OF GROUP RESPONSIBILITY

i. Any Student Organization can be held responsible under the Code for its actions or those of its members acting together. Misconduct on the part of the organization will be addressed when one or more of the following circumstances occur:

    i. An alleged violation arises out of a Student Organization sponsored, financed or otherwise supported activity.

    ii. A pattern of individual alleged violations has occurred and/or continues to occur without adequate control, response or sanction on the part of the Student Organization or its leaders.

    iii. The Student Organization or its related activities provided the context for the alleged violation.

    iv. The action resulting in the alleged violation has received either the implied or overt consent of the Student Organization and/or its leaders.

    v. The Student Organization overtly places or implicitly allows active members of the Student Organization to be in a position to act on behalf or with the authority of the Student Organization.

ii. The actions of active, prospective, or associate members (pledges) of a Student Organization may be considered hazing. Refer to Section 5 for full details on Hazing.

iii. It is the responsibility of the Student Organization's President or Student-member designee to represent the organization throughout the conduct process.

## 14. HEARING PROCEDURES

i. During the hearing, the Hearing Officer presides over the Code hearing and makes all procedural decisions.

ii. The burden of proof in a hearing rests with the University and Respondents are presumed Not Responsible. The standard of proof is a Preponderance of the Evidence. The determination of "Responsible" or "Not Responsible" will be based solely on the information and/or testimony presented.

iii. Formal rules of process, procedure and/or technical rules of evidence (including hearsay rules) applicable in the criminal or civil court process are not used in Code proceedings.

iv. Witnesses only participate in the hearing to the degree that a question is posed to them. They may not speak or otherwise participate in the Hearing.

v. In Code hearings involving Academic Misconduct violations, the Instructor can choose to be present in the hearing in its entirety and to ask questions of the Respondent and witnesses when prompted. The Hearing Officer has the discretion to require the Instructor to step out of a hearing if non-academic student conduct issues are being discussed.

vi. The hearing will be recorded. The recording will serve as the only official record of the proceedings. No other recordings are permitted.

vii. If the Respondent, Complainant, or Instructor fails to appear at the scheduled hearing, the hearing will be held, and a decision will be rendered in their absence.

viii. Upon request by the Respondent, Complainant, or witnesses, the Hearing Officer may permit the individual to provide relevant information during the hearing in a manner that avoids direct contact with the Respondent, Complainant, or witnesses.

ix. For Code hearings involving Conduct Violations, the Hearing Officer has the discretion to determine the order of the hearings which may involve, but is not limited to, the following:

    i. Introductory statement by Hearing Officer including a reading of the allegations and charge(s), introduction of information that is the basis for the charges, and identification of the hearing participants.

    ii. Statement by the Respondent or Respondent's Advisor and submission of any previously submitted relevant written information (e.g., records, exhibits, written statements) except for witness statements (see below) for consideration by the Hearing Body.

    iii. Questions directed to the Respondent by the Hearing Body.

    iv. Presentation of witnesses and any results of fact-finding conducted prior to the hearing.

    v. The Respondent or Respondent's Advisor may pose questions directly to the witness and Complainant (if applicable). In certain circumstances to be determined by the Hearing Officer, questions may be presented in writing to the Hearing Officer who will then ask the witness the question(s).

    vi. Submission by the Respondent or Respondent's Advisor of written statements (if any) of witnesses who are not present.

vii. Follow-up questions (if any) directed to the Respondent by the Hearing Body.

viii. Final statement by the Respondent or Respondent's Advisor.

ix. Hearing Officer brings hearing to a close.

x. For Code hearings involving Academic Misconduct Violations, the Hearing Officer has the discretion to determine the order of the hearing which may involve, but is not limited to, the following:

    i. Introductory statement by Hearing Officer including a reading of the allegations and charge(s), introduction of information that is the basis for the charges and identification of the hearing participants.

    ii. Statement by the Instructor and submission of any previously submitted relevant written information (e.g., records, exhibits, written statements) except for Witness statements (see below) for consideration by the Hearing Body.

    iii. Statement by the Respondent or Respondent's Advisor and submission of any previously submitted relevant written information (e.g., records, exhibits, written statements) except for Witness statements (see below) for consideration by the Hearing Body.

    iv. Questions directed to the Instructor by the Hearing Body and the Respondent or Respondent's Advisor.

    v. Questions directed to the Respondent by the Hearing Body and the Instructor.

    vi. Presentation of witnesses and any results of fact-finding conducted prior to the hearing.

    vii. The Respondent or Respondent's Advisor may pose questions directly to the witness(es).

    viii. The Instructor may pose questions directly to the witness(es).

    ix. Submission by the Respondent or Respondent's Advisor of written statements (if any) of witnesses who are not present.

    x. Submission by the Instructor of written statements (if any) of witnesses who are not present.

    xi. Follow-up questions (if any) directed to the Instructor by the Hearing Body and Respondent.

    xii. Follow-up questions (if any) directed to the Respondent by the Hearing Body and the Instructor.

    xiii. Final statement by the Instructor.

    xiv. Final statement by the Respondent or Respondent's Advisor.

    xv. Hearing Officer brings hearing to closure.

xi. Deliberation by the Hearing Body is held outside the presence of the Respondent for all hearings, and Instructor, for hearings involving Academic Misconduct violations.

xii. Prior Student Conduct and Academic Misconduct records, Character Witness Statements and/or Impact Statements are considered only in determining the appropriate sanction(s).

xiii. In Code hearings, the SCC will make a recommendation of the decision and sanctions to the Hearing Officer. The Hearing Officer may take one of these

27

actions with respect to the recommendation:
   i.   Adopt;
   ii.  Modify;
   iii. Reject the findings and sanctions; or,
   iv.  Remand for a rehearing.

xiv.  If the Committee decision is not adopted, the Hearing Officer will include the reasons for any differences between the recommendations of the Committee and the Hearing Officer's final decision as part of the decision letter.

xv.  A decision letter will be sent to the Respondent within fourteen (14) Business Days from the conclusion of the Hearing Body's deliberation. The hearing decision will include the decision, sanctions imposed (if applicable) and the explanation of the right to appeal. For Academic Misconduct violations, the written decision will also be sent to the Instructor, upon Final Agency Action.

xvi.  This Regulation acknowledges the Instructor authority to award Student grades. If the Student is found "Not Responsible" for alleged violations of Academic Misconduct, the faculty member should reinstate the grade the Student would have received if the misconduct charges were not submitted and any reduction in grade should be based on the Student's quality of work and not an allegation of Academic Misconduct.

## 15. TITLE IX PROCEDURES

Conduct meeting the definition of Sexual Harassment or Sexual Misconduct (including the Violence Against Women Act violations incorporated via the Clery Act) are administered via FIU Regulation 105. SCAI serves as the central repository for all student sanctions administered under the Code and FIU Regulation 105, and any prior misconduct under the Code or FIU Regulation 105 is considered in any sanctioning stage of either proceeding.

## 16. SANCTIONS

   i.   Sanctions may only be imposed when a Respondent has been found in violation of the Code. In cases where a Respondent has been found "Not Responsible" for the alleged violation(s), no sanctions will be assigned.

   ii.  In light of the facts and circumstances of each case, the following sanctions or combination of sanctions (with or without appropriate modifications) will be imposed upon any Respondent found to have violated the Code or FIU Regulation 105. Sanctions will be commensurate with the prohibited conduct with consideration given to any aggravating and mitigating circumstances, including, but not limited to, the Respondent's conduct and Academic Misconduct record. Fees may be associated with certain sanctions (e.g., counseling consultation, online programs) and are the Respondent's responsibility.

   iii. When an undergraduate student is found Responsible for Academic Misconduct violations, SCAI will determine any University Sanctions which are not related to a grade or the course in general. The Instructor will recommend Course Sanctions and communicate their recommendation to SCAI. SCAI will then communicate the final outcome to the student. Should the Instructor fail to

28

provide SCAI with recommended course sanctions, SCAI may assign Course Sanctions. If the undergraduate student is a member of the Honors College, SCAI will notify the Dean of the Honors College that a student was found in violation. The Dean of the Honors College will determine if Honors College action is necessary.

iv. When a graduate or professional student is found Responsible for Academic Misconduct violations, SCAI notifies the Instructor, Dean or designee of the University Graduate or Professional School, and the Dean or designee of the Academic College in which the graduate or professional student resides, upon Final Agency Action. SCAI will determine any University Sanctions, which are not related to a grade or the course. The Instructor will recommend Course Sanctions and communicate their recommendation to SCAI. Should the Instructor fail to provide SCAI with recommended course sanctions, SCAI may assign Course Sanctions. The College Dean or designee will in turn notify the graduate or professional program that a student was found in violation. The student's graduate or professional program will determine if program action is necessary.

v. In the event the course Instructor is no longer at the University, the Department Chair (or designee) will determine the recommended Course Sanctions.

vi. University Sanctions

   i. **Written Reprimand**: The University takes official notice that such actions are inappropriate and not in accordance with our community standards.

   ii. **Educational Activities**: Appropriate educational steps (such as referrals for alcohol or drug education, reflection activities, letters of apology, directed study programs, or classes).

   iii. **Conduct Probation**: Period of time where a Respondent is considered not in good standing with the University. While on conduct probation, any additional violations of the Code or other University Policies may result in suspension or expulsion.

   iv. **Deferred Suspension**: Period of time in which suspension is temporarily withheld or withheld pending completion of other sanctions by a specified deadline date. A Respondent who is on deferred suspension is considered not in good standing with the University, resulting in applicable restrictions on privileges and/or activities which may include, but are not limited to, being prohibited from participating in study abroad or alternative break, or serving as a peer advisor, resident assistant or elected/appointed Student leader in Student Government or other Student Organizations. Additional restrictions on University privileges and/or activities may be imposed on the Respondent based on their current or potential future activities. If the Respondent fails to fulfill the sanctions described in the decision letter (including failure to timely fulfill the sanction), the Respondent will no longer be considered on deferred suspension but will be automatically suspended with no further appeal, for a minimum of one semester. A

29

student organization who is on deferred suspension is considered not in good standing with the University. Failure to fulfill the sanctions described in the decision letter (including failure to timely fulfill the sanction), will result in the student organization being removed and separated from the University and automatically losing University recognition and all rights and privileges associated with recognition. In addition, it prohibits the group's participation in all intramural and University activities and the use of University facilities at all university properties. While on deferred suspension, any additional violations of the Code or other University Policies may result in suspension or expulsion.

v.   **Suspension**: Separation from the University for a specified period of time. A Respondent is considered not in good standing with the University while suspended. The Respondent may not attend classes (either in person or online) and is banned from being on or in any University Premises or On-Campus Housing. The suspended Respondent is also banned from participation in any University-sponsored/related event or activity and their FIU OneCard will be deactivated. This sanction is recorded on the Respondent's academic transcript during the period of suspension. A Respondent who is suspended from the University is not eligible for tuition and/or registration fee reimbursement except as provided by University Policies. The Respondent will be administratively withdrawn from courses and will lose respective credit hours. If a student is suspended for more than three (3) consecutive semesters, the Student must reapply to the University prior to returning. A student organization is removed and separated from the University and automatically loses University recognition and all rights and privileges associated with recognition. In addition, it prohibits the group's participation in all intramural and University activities and the use of University facilities at all university properties.

vi.   **Expulsion**: Permanent separation from the University with no possibility of readmission. This sanction is recorded on the Respondent's academic transcript permanently. A Respondent is considered not in good standing with the University after being expelled. The Respondent may not attend classes (either in person or online) and is banned from being on or in any University Premises or On-Campus Housing. The expelled Respondent is also banned from participation in any University-sponsored/related activity or event and their FIU OneCard will be deactivated. A Respondent who is expelled from the University is not eligible for tuition nor registration fee reimbursement except as provided by University Policy. The Respondent will be administratively withdrawn from courses and will lose respective credit hours. A student organization is permanently removed and separated from the University with no opportunity to return to the University.

vii.   **Remedies**

30

      i.     No Contact Order: the requirement that the Respondent and/or friends have no contact with another person.

      ii.    Restitution: Restitution to the University or to the impacted part(ies) of the violation. Any such payment on restitution will be limited to actual cost of repair, services not covered, or replacement costs.

      iii.   Restrictions/Loss of Privileges: Restrictions or loss of privileges which may be imposed upon a Respondent for a specified amount of time, including but not limited to, participation in Student activities, University or Student events, representation of the University on athletic teams or in leadership positions, presence at University residence halls or other buildings/areas of campus, participation as a peer advisor, resident assistant or elected/appointed Student leader in Student Government or other Student Organizations, and/or participation in study abroad or alternative break programs. For a student organization, restrictions or loss of privileges include, but are not limited to, participation in or exclusion from Student activities, social events, intramural activities, alcohol functions or  on-campus facilities. Additional restrictions on University privileges and/or activities may be imposed on the Respondent based on their current or potential future activities.

    viii.   **Course Sanctions**

      i.     **Grade Penalty on the Assignment/Exam/Project with Resubmission**: A point/grade reduction on the assignment/assessment in question, and with the permission of the Faculty member, an opportunity to resubmit the assignment/ assessment with the addition of the implemented point/grade reduction.

      ii.    **Grade Penalty on the Assignment/Exam/Project**: A point/grade reduction on the assignment/assessment in question.

      iii.   **Overall Course Grade Penalty with Drop**: Receive a decrease in overall grade or an F for the entire course. However, the Student will be permitted to drop or withdraw from the course with approval from the SCAI Director or designee. Requests for drop consideration must be submitted in writing with rationale to the SCAI Director or designee, where the final approval rests and is not eligible for independent appeal outside of the formal conduct appeal process.

      iv.   **Overall Course Grade Penalty**: Receive a decrease in overall grade or an F for the course. A point/grade reduction for the entire course. There will be no ability to drop or withdraw from the course for any reason.

   vii.   Violations of the Code that are motivated by prejudice toward a person or

group because of such factors such as race, color, creed, religion, ethnicity, national origin, disability, age, marital status, genetic information, veteran status or any group/class protected by state or federal law may result in stronger sanctions.

viii. Students who are found "Responsible" for Academic Misconduct violations under the Code are prohibited from using the Grade Forgiveness Policy for the course in which the Academic Misconduct occurred.

ix. Sanctions take immediate effect unless appealed, except for suspensions or expulsions, which may be stayed until Final Agency action at the discretion of the SCAI Director. During such time, the SCAI Director may implement any supportive/interim measures available under the Code, excepting an interim suspension.

x. Proof of the completion of the sanction(s) must be provided as directed in the decision letter. It is the responsibility of the Respondent to ensure that such proof is provided by the specified date. Failure of the Respondent to provide proof by the specified date may result in a charge of failure to comply, placement of a Student Conduct hold on a Respondent's academic and University records, and suspension if the Respondent had been on deferred suspension.

17. **WITHDRAWAL FROM A COURSE PENDING CHARGES**
Upon receipt of notification of allegations of Academic Misconduct, a Student can choose to withdraw from the course in question, in accordance with the University policies related to course withdrawal. Students who withdraw from a course will have their ability to register for future semesters temporarily placed on hold until the SCAI Director or designee is assured that the Student is satisfactorily responding to the charges. Students who are found "Responsible" of Academic Misconduct in a course from which they have withdrawn are still eligible to receive the appropriate sanctions (as listed in Section 16) based on the case and may be reinstated to the course from which they have withdrawn.

18. **APPEALS**
i. **Appellate Officer**: The Appellate Officer for all appeals is the Chief Student Affairs Officer or designee.

ii. **Appeal Form/Basis for Appeals**: The Respondent wishing to appeal must complete the appeal form in full, indicating the basis for the appeal, explain in detail the reasons for the appeal and attach supporting relevant documentation. The burden of proof rests with the person appealing to clearly demonstrate the reason for appeal as set forth below. Appeals are not a rehearing of the Student Conduct matter but are only a file and/or document review. The reason for the appeal must be based on at least one of the following:

i. Violations of the appealing party's rights or other failure to follow the Student Conduct procedures that substantially affected the outcome of the initial hearing. Appeals based on this reason will be limited solely to a review of the record of the hearing;

ii. New information which was not available at the time of the hearing and

could not have been presented. In addition, the appealing party must show that the new information could have substantially affected the outcome; or

 iii. The severity of the sanction is disproportionate to the nature of the charge(s).

iii. **Appeal Requests**: All appeals must be in writing and submitted following the instructions on the appeal form available in the decision letter.

The person wishing to appeal must complete the appeal form in full and send it to the Appellate Officer for receipt no later than 5:00pm of the seventh (7th) Business Day after the delivery date of the hearing decision letter. If the appeal form is submitted and/or signed by any individual other than the appealing party, it will not be accepted.

iv. **Untimely Appeal**: If a hearing decision is not appealed within the timeframe, the original decision becomes Final Agency Action.

v. **The Respondent's Status Pending Appeal**:

 i. An appeal has no effect on a Respondent's status when the sanction was suspension or expulsion. The sanction(s) are effective immediately from the date of the decision, unless stayed until Final Agency action at the discretion of the SCAI Director. During such time, the SCAI Director may implement any supportive/interim measures available under the Code, excepting an interim suspension.

 ii. If the Respondent appeals in any other case, once an appeal is requested, the sanction(s) will be stayed and will not take effect until the appeal process has been completed. Under these circumstances, a Respondent shall remain eligible to attend classes and University activities pending the appeal.

 iii. If no appeal is requested, the sanctions will take effect immediately.

vi. No person may hear or decide an appeal if they conducted or participated in the Code proceeding being reviewed on appeal.

vii. The Appellate Officer shall first determine if sufficient grounds for the appeal exists and then, if so, may either deny the appeal, thus sustaining the initial decision and sanction(s), or do one of the following:

 i. If the basis of the appeal is that the severity of the sanction was disproportionate to the nature of the offense and the Appellate Officer finds the appealing party proved their allegation, the Appellate Officer may modify the sanction.

 ii. If the basis of the appeal is that there was a failure to follow the Student Conduct procedures that substantially affected the outcome, or that there was new information which was not reasonably available at the time of the hearing and could not have been discovered through the exercise of due diligence, which would have substantially affected the outcome and the Appellate Officer finds that the appealing party proved their allegation, the Appellate Officer will order a new hearing.

viii. **Written Decision on Appeal**: The appellate decision is issued in writing to the Respondent within twenty-one (21) Business Days of receipt of the written request for appeal unless notification is given that additional time is necessary for consideration of the record on appeal.

    ix. **Effect of the Final Appellate Decision**: The decision of the Appellate Officer constitutes Final Agency Action. In the case of a suspension or expulsion of a Respondent, the decision of the Appellate Officer will include notice to the Respondent's right to appeal to an external judicial forum.

    x. **Academic Grievance Process**: The Respondent may not use the Student Academic Grievance Policy as a way to appeal the filing of a complaint or the outcome of the Academic Misconduct process outlined in this regulation.

## 19. RECORDS

    i. All student conduct-related records, including records involving Conduct violations, Academic Misconduct violation, and FIU Regulation 105, will be housed in the web- based system maintained by SCAI.

    ii. The release of student conduct-related records will be governed by applicable federal and state laws regarding the privacy of education records.

    iii. SCAI may place a student conduct hold on the records and registration of any Respondent who has a pending Code matter, including any outstanding sanctions. Respondents may not be allowed to graduate or receive grades, until pending matter(s), including any outstanding sanctions, are resolved. The University reserves the right withhold a transcript until properly notated.

    iv. The official University email address on file with the Registrar's Office will be used for all student conduct correspondence sent. For Student Organizations, the official University email address on file with the Registrar's Office for the organization's respective President will be used. The Hearing Officer may, in their discretion, decide to send the notices via additional means (e.g., overnight delivery) and/or to other authorized University Officials.

    v. Suspension(s) and Expulsion will be noted permanently on a Student's academic transcript. Student conduct-related files are kept in compliance with General Records Schedule GS5, but not for less than seven (7) years from the date of the last incident(s) that the Respondent was involved in that resulted in Code charges. However, in the case of suspension or expulsion, the files shall be permanently retained.

    vi. Students may have access to the information in their student conduct and Academic Misconduct file by submitting a written request to the SCAI Director. The access will be provided in accordance with federal and state laws regarding the privacy of education records (FERPA) and University regulation (see FIU Regulation 108).

## 20. AUXILIARY AIDS AND SERVICES

    i. Students with disabilities as defined by the Americans with Disabilities Act who require special accommodations for meetings/hearings should notify SCAI and the Disability Resource Center in writing at least three (3) Business Days prior to any meeting or hearing.

## 21. CONFLICT RESOLUTION

    i. Not every matter processed through SCAI is required to go through summary resolution or a hearing. An overall goal of SCAI is to provide a learning

34

process which entails understanding and respecting the rights of others. An avenue utilized by SCAI to foster mutual respect and understanding when differences arise is Conflict Resolution. Conflict Resolution through SCAI is an informal and confidential process.

ii. Conflict Resolution may be utilized where the incident in question is minor in nature, the parties involved chose to participate, and the University cannot proceed with charges through the University student conduct system.

iii. Conflict Resolution cases handled through SCAI will not be identified or filed as a student conduct matter. Conflict Resolution records will be maintained separate from student conduct files and will not be recorded or reported as part of a Charged Student's record. All Conflict Resolution files are private and will not be released without written consent except in cases where the conduct or behavior is a repeat offense. In repeat cases, this information is only released to the Hearing Body and only used if the Respondent is found responsible for a violation of the Code.

iv. Conflict Resolution files are kept for seven (7) years from the date of the resolution.

v. Participation must be voluntary, and either party can request to end Conflict Resolution at any time which may result in the initiation of the student conduct process for the behavior.

## 22. INTERPRETATION AND REVISION

i. Any question of interpretation or application of the Code shall be referred to the Chief Student Affairs Officer or designee for final determination.

ii. The Code shall be reviewed periodically by a committee which shall include Student representation under the direction of the SCAI Director.

iii. The Academic Misconduct procedures outlined in this regulation will be reviewed at least every three (3) years by a committee which shall include Student and faculty representation under the direction of the SCAI Director. The committee will be appointed by the Chair of the Faculty Senate, in consultation with the SCAI Director and the Faculty Fellow for Academic Integrity. Any changes to Academic Misconduct procedures must be approved by the Faculty Senate.

Contact: Director, Office of Student Conduct and Academic Integrity
Location: GC 311
Phone: (305) 348-3939 / Fax: (305) 348-6477
Email: conduct@fiu.edu | webpage: conduct.fiu.edu

Authority: Florida Board of Governors Regulation 6.0105 Student Conduct and Discipline; Florida Board of Governors Regulation 6.010 Student Affairs Administration; Florida Board of Governors Regulation 1.001(4)(a)(10); and Section 7(d), Article IX, Florida Constitution. History—New June 19, 2012, Amended 9.17.12, 4.8.14, 6.8.18, 6.25.19, 8.13.20, 10.30.20, 9.15.21, 10.12.22, 8.21.23, 6.10.24, and 6.16.25.