**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:26-cv-25395-JB/Torres

ICEBREAKERS, et al.,

Plaintiffs,

v.

JEANETTE NUÑEZ, et al.,

Defendants.

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

## *Introduction*

Plaintiffs ignore that public institutions—including universities—may impose reasonable regulations for the use of their property without violating the First Amendment. Florida International University (FIU) has done exactly that. FIU recognizes that free expression is a valuable part of its mission. It therefore permits the full range of lawful expressive activities in *outdoor* areas, including organized demonstrations. But FIU's Regulation 110 treats *indoor* demonstrations differently. The regulation imposes a narrow restriction on a subset of expressive conduct, prohibiting indoor protests, demonstrations, picketing, marches, parades, and similar activities. In this way, FIU preserves the functions of its indoor spaces through an easy-to-administer regulation, while leaving Plaintiffs ample avenues to engage in expressive demonstrations outdoors.

Plaintiffs nevertheless chose to violate FIU's regulation. They chose to demonstrate and protest during an ongoing presentation inside a building. Video from the event shows that this indoor demonstration disrupted and obstructed the view of others. FIU then appropriately initiated student conduct charges for violating the prohibition on indoor protests and demonstrations.

FIU's regulation and the university's actions are constitutional. While it is true that Plaintiffs don't surrender their First Amendment rights at the university gates, it is equally true that FIU doesn't need to give students and other members of the public free rein over its facilities. FIU's limited regulation of expressive activity is constitutional and survives scrutiny.

Plaintiffs therefore fail to show a likelihood of success on the merits. This Court should deny their request for a preliminary injunction.

***Background***

**A. Florida International University and Regulation 110**

FIU is a public university of the State of Florida. It has a student body of over 54,000 and is "among the largest universities in the nation." https://www.fiu.edu/about/index.html. Its campus includes classrooms, dormitories, recreation facilities, research buildings, administrative offices, and more, with buildings serving multiple purposes. https://www.fiu.edu/locations/index.html.

FIU regulates its campus and facilities to better serve its mission. Regulation 110—"Expressive Activities in Outdoor Areas on Campus"—governs expressive activities on FIU grounds. The regulation defines expressive activities as "assemblies, demonstrations, exercises of free speech, protests, parades, marches, and picketing protected under the First Amendment to the United States Constitution and Article 1 of the Florida Constitution." Doc.4-11 at 1. Regulation 110 doesn't reach "commercial speech," which FIU separately addresses through Regulation 114. *See* **Exhibit A**.

Regulation 110 has two key provisions. Start with Regulation 110(2): it broadly permits *all* expressive activities "in outdoor areas of campus so long as the conduct is lawful and does not materially and substantially disrupt the normal operations of the University or materially and substantially infringe upon the rights of others." *Id.* Then comes Regulation 110(3), which limits only a *subset* of expressive activities within FIU's indoor spaces. This provision reads in full:

> To protect health, safety, and welfare and prevent disruption of University activities, *protests, parades, marches, picketing, demonstrations, and other similar expressive activities* are prohibited inside University buildings or other University indoor facilities. University buildings and other University indoor facilities *are designed for instruction, study, reflection, group discussion, research, administrative functions, and other University activities and operations*. This provision will be enforced in a content and viewpoint neutral manner.

Doc.4-11 at 1 (emphasis added). Notably, Regulation 110(3) does not apply to *all* expressive activities—only protests, parades, marches, picketing, demonstrations, or other activities like those

enumerated examples. *Id.* In addition, Regulation 110 requires students to provide identification on request to FIU officials and law enforcement while on FIU property. *Id.*

**B. The Presidential Speaker Series and the Protest.**

On March 13, 2026, FIU hosted a live discussion as part of its "Presidential Speaker Series." The event featured FIU President, Jeanette Nuñez, and former professional baseball player and Miami-native, Alex "A-Rod" Rodriguez, in a large auditorium. The event was advertised as "[a] fireside chat and Q&A moderated by President Jeanette M. Nuñez" and featuring Mr. Rodriguez. **Exhibit B.** It took place in Room 160 of FIU's Student Academic Success Center.

The demonstrators didn't sit quietly during the conversation between President Nuñez and A-Rod. A group of people seated side-by-side in the section of seating nearest to the front of the room stood up in unison, turned their backs to the speakers, and faced the rear of the auditorium. They wore identical t-shirts bearing the message "ICE OFF FIU." **Exhibit C at 0:25-1:07**. FIU Police body-camera footage shows where the demonstrators positioned themselves: occupying most of the width of the rows, presumably so that most of the room would divert its attention to them. *Id.* The footage also shows that the demonstrators stood side-by-side and blocked the view of attendees seated behind them. *Id.*; *see also* Doc.4-10 at 5. Plaintiffs say they stood in this fashion for "less than five minutes." Doc.4-2 at ¶ 10. Detective Francisco Gamundi with the FIU Police Department, who was present and working during this event, observed that the demonstrators disrupted the event by obstructing the view of other attendees and causing a distraction. **Exhibit D ¶ 2-4**.

Plaintiffs' conduct didn't end when they left the room, either. Outside the building, FIU law enforcement asked the demonstrators to provide their student IDs. They didn't comply. Doc.4-10 at 5; **Exhibit E at 00:47-01:30**. Videos and photographs taken by the demonstrators and posted

on social media make plain another point: the demonstrators were allowed to protest and to question staff and the presenters in the venue's outdoor area without interference or subsequent discipline. *See* **Exhibit F at 0:30-2:00**. Nor have Plaintiffs alleged that they were penalized in any way for their outdoor expression.

After the incident, FIU initiated student conduct proceedings against several students, including Plaintiffs. *See* Doc.4-13. FIU's correspondence noted that the students had violated FIU Regulation 110. *Id.* A Joint Student Conduct Committee, composed of two students and a university employee, heard the matter and found the students responsible for violating Regulation 110. The Committee issued a written reprimand and required the students to record a short video explaining their "understanding of FIU Regulation 110, what is expected under FIU Regulation 110 related to indoor and outdoor areas, and how [they] will apply what [they] have learned moving forward." Doc.4-14 at 1. The students appealed this finding and the appeal was ultimately denied. Doc.4-15. Plaintiffs then filed this lawsuit and now seek a preliminary injunction.

***Legal Standard***

Plaintiffs face a demanding standard for a preliminary injunction. "[A] preliminary injunction in advance of trial is an extraordinary remedy." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (citing *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983)). To obtain one, the moving party must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) [that] the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) [that,] if issued, the injunction would not be adverse to the public interest." *Harbourside Place, LLC v. Town of Jupiter*, 958 F.3d 1308, 1313 (11th Cir. 2020)

(alterations in original) (quoting *Lebron v. Sec'y, Fla. Dep't of Children and Families*, 710 F.3d 1202, 1206 (11th Cir. 2013)).

***Argument***

**A. Regulation 110(3) is a reasonable regulation of FIU's indoor facilities.**

FIU's Regulation 110(3) is a reasonable and lawful regulation of its indoor facilities. Plaintiffs contend otherwise, asserting that *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), granted students a nearly-unlimited right to protest on government property. *See* Doc.4 at 7. Plaintiffs are wrong. *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983) ("Nowhere have we suggested that students, teachers, or anyone else has an absolute constitutional right to use all parts of a school building or its immediate environs for" "unlimited expressive purposes.") (quotation omitted); *see also Sword v. Fox*, 446 F.2d 1091, 1096 (4th Cir. 1971) (quotation omitted) ("[S]tudents do not have an unlimited right to demonstrate on university property.").

Plaintiffs want to ignore the line of First Amendment cases concerning appropriate time, place, and manner restrictions. "It is by now clear that the First Amendment does not guarantee access to property just because it is owned by the government." *Bloedorn*, 631 F.3d at 1230 (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 803 (1985)). As a public institution devoted to an educational mission, FIU may reasonably regulate activities on its property to promote that mission. To borrow from a binding opinion from the former Fifth Circuit, *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), FIU may create rules for the use of its property that are designed to maintain "the order and decorum within the educational system," *Burnside v. Byars*, 363 F.2d 744, 748 (5th Cir. 1966). And "[j]ust as in the community at large, reasonable regulations with respect to the time, the place, and the manner in

which student groups conduct their speech-related activities must be respected." *Healy v. James*, 408 U.S. 169, 192-93 (1972). FIU may therefore impose "reasonable regulations" "upon the use of its campus and facilities." *Bloedorn*, 631 F.3d at 1230 (quoting *Widmar v. Vincent*, 454 U.S. 263, 267 n.5 (1981)).

Regulation 110(3) provides a reasonable time, place, and limitation. It regulates a narrow category of conduct on FIU property—the prohibition on "protests, parades, marches, picketing, demonstrations, or other similar expressive activities" that occur inside FIU's buildings. That is the rule Plaintiffs challenge.

This Court's assessment of the regulation's limitations begins with the "nature of the government property involved"—the type of public forum at issue. *Bloedorn*, 631 F.3d at 1230 (citing *United States v. Frandsen*, 212 F.3d 1231, 1237 (11th Cir. 2000)). There are four types of public forums: "the traditional public forum, the designated public forum, the limited public forum, and the nonpublic forum." *McDonough v. Garcia*, 116 F.4th 1319, 1322 (11th Cir. 2024) (citation omitted). A traditional public forum is a place that has "immemorially been held in trust for the use of the public and, time out of mind, ha[s] been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions," which has typically been defined to include public parks and streets. *Id.* at 1323 (quotation omitted). A designated public forum is other public property that the government has purposely opened for expressive activity. *Id.* As the courts have explained, "[t]hese forums and others like them need not be held open indefinitely for public speech." *Id.* (citing *Perry Educ. Ass'n*, 460 U.S. at 46). A limited public forum is one that the government has reserved "for certain groups and for the discussion of certain topics." *Id.* at 1328 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001)). And a non-public forum

is one that "is not by tradition or designation a forum for public communication." *Id.* at 1323 (quoting *Perry Educ. Ass'n*, 460 U.S. at 46).

Plaintiffs skip this first step and jump straight to strict-scrutiny review of FIU's regulation. *See* Doc.4 at 7-9. But, on its face, Regulation 110(3) applies to university property. The Supreme Court has recognized that "a university differs in significant respects from public forums such as streets or parks or even municipal theaters." *Widmar*, 454 U.S. at 267 n.5. Plaintiffs provide no evidence to conclude otherwise—they fail to show that Regulation 110(3) applies to a designated portion of campus that FIU has intentionally held open for general public expression. *See Bannon v. Sch. Dist. of Palm Beach Cnty.*, 387 F.3d 1208, 1213 (11th Cir. 2004) ("[A] school creates a designated public forum only when school authorities have by policy or practice opened those facilities for indiscriminate use by the general public." (quotation omitted)); *cf. Bloedorn*, 631 F.3d at 1230 (the fact that one area of a university is a designated public forum "does not compel the conclusion that it must open the doors of all its facilities for public discourse").

Because Plaintiffs bear the burden of demonstrating entitlement to the extraordinary relief they seek, *ACLU of Fla., Inc. v. Mia.-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009), they had to provide enough facts to trigger strict scrutiny. They failed.

What's left then is this: Regulation 110 designates outdoor areas of FIU as open to expressive activity, while expressly limiting expression within buildings and facilities. Regulation 110(3) articulates that FIU's indoor facilities are "designed for instruction, study, reflection, group discussion, research, administrative functions, and other University activities and operations." Doc.4-11 at 1. The areas to which Regulation 110(3) facially applies are therefore non-public forums or, at most, limited public forums. And the available facts demonstrate that the specific auditorium where Plaintiffs conducted their demonstration was a limited public forum. The

speaker series that Plaintiffs disrupted through their demonstration was designated for the purpose of presenting on the limited topics discussed—not for general demonstration. Plaintiffs then are only entitled to the lower standard of review applicable to limited and non-public forums.

Regulations of limited and non-public forums "survive so long as they are viewpoint neutral and reasonable." *McDonough*, 116 F.4th at 1322. A viewpoint neutral regulation is reasonable where it is "wholly consistent with the government's legitimate interest in preserving the property for the use to which it is lawfully dedicated, and prohibited speech must be naturally incompatible with the purposes of the forum." *Moms for Liberty v. Brevard Pub. Sch.*, 118 F.4th 1324, 1332 (11th Cir. 2024) (quotation omitted). The restriction "need not be the most reasonable or even the only reasonable limitation." *Id.* (quotations omitted). And for a limited public forum, the government retains the "right to make distinctions in access on the basis of" "speaker identity." *Bloedorn*, 631 F.3d at 1321 (quoting *Perry Educ. Ass'n*, 460 U.S. at 49). "Thus, 'a speaker may be excluded from' a limited public forum 'if he is not a member of the class of speakers for whose especial benefit the forum was created.'" *Id.* (quoting *Cornelius*, 473 U.S. at 806).

School settings require a more refined analysis. "[T]he identity of the speaker and the nature of the expression" are considered. *Bannon*, 387 F.3d at 1213. For matters involving "pure student expression"— defined as "student expression that merely happens to occur on the school premises"—the Eleventh Circuit has applied the "substantial disruption of or material interference with school activities" test set forth by *Tinker*. *Id.*; *see also Doe v. Valencia Coll. Bd. of Trs.*, 838 F.3d 1207, 1211 (11th Cir. 2016). But "student expression may unquestionably be regulated when doing so 'contributes to the maintenance of order and decorum within the educational system.'" *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1271 (11th Cir. 2004) (quoting *Burnside*, 363 F.2d at 748).

Regulation 110(3) easily survives as a limited or non-public forum with the school-related refinements. It is constitutional as written and as applied to Plaintiffs' conduct on FIU property.

First, start with viewpoint and content neutrality. Plaintiffs don't meaningfully dispute that Regulation 110(3) is viewpoint neutral. Instead, they assert that the regulation is content based due to its reference to commercial speech. Although only viewpoint neutrality is required, Plaintiffs' assertion still needs correction: FIU's regulations don't provide *more* protection to commercial speech, as Plaintiffs claim. *See* Doc.4 at 7-8. FIU carves out commercial speech because Regulation 114 separately governs "Commercial Solicitation and Advertising." FIU is permitted to regulate commercial activities in a different manner than expressive activities. *See Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1209-11 (M.D. Fla. 2022). What's more, FIU regulates commercial activity more stringently than expressive activity. *See* **Exhibit [A]** (requiring persons engaged in "advertising and other promotional marketing efforts" to obtain approval from FIU leadership and subjecting those activities to penalties for violating the policy).

It's also wrong for Plaintiffs to say that "Regulation 110 requires consideration of the content and viewpoint" without backing it up with a more fulsome explanation. Doc.4 at 8. Note that Regulation 110(3) includes no language suggesting that its application depends on the topic or viewpoint being expressed. The regulation applies equally to a protest, parade, march, or demonstration advocating for or against greater immigration enforcement on campus. For this reason it's unlike UCF's regulation that the Eleventh Circuit said triggered greater scrutiny for viewpoint discrimination. *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1125-26 (11th Cir. 2022). It's more like the regulations that courts have upheld for decades. *See infra*.

Second, the regulation provides a reasonable means to further FIU's interest in preserving its property "for the use to which it is lawfully dedicated," in part because the prohibited activity

is “naturally incompatible” with the use of its indoor facilities. *Moms for Liberty*, 118 F.4th at 1332 (quotation omitted). More to the point, the limitation on indoor activity “contributes to the maintenance of order and decorum within the educational system.” *Burnside*, 363 F.2d at 748. FIU’s indoor facilities are “designed for instruction, study, reflection, group discussion, research, administrative functions, and other University activities and operations.” Doc.4-11 at 1. Regulation 110(3) therefore reasonably prohibits indoor “protests, parades, marches, picketing, demonstrations, and other similar expressive activities”—activities that are reasonably forecast to materially disrupt and impact the safety and the function of those facilities.

Two circuit court cases make the points clearer still.

In *Sword v. Fox*, the Fourth Circuit reviewed a similar university regulation that barred “demonstrations” inside college buildings while permitting demonstrations elsewhere on campus. 446 F.2d at 1093. The Fourth Circuit observed that “[c]ollege buildings are generally dedicated to classrooms, administrative offices, libraries, health centers, or dormitories,” and explained that “[i]t can scarcely be argued that demonstrations in a classroom or administration building during day would not create a disruption in the educational activity of the institution and inconvenience its normal administrative operations.” *Id.* at 1097. *Sword* upheld the regulation as reasonable and constitutional—particularly because “demonstrations, without any restriction of purpose, are permitted in other areas of the campus.” *Id.* at 1098-99.

More recently, in *United States v. Nassif*, the D.C. Circuit reached the same result when it upheld a prohibition on “parad[ing], demonstrat[ing], or picket[ing] in any of the Capitol Buildings.” 97 F.4th 968, 974 (D.C. Cir. 2024) (quoting 40 U.S.C. § 5104(e)(2)(G)). The D.C. Circuit treated the U.S. Capitol as a nonpublic forum and then held the statute both viewpoint neutral and reasonable. The prohibition at issue in *Nassif* served the same purpose as the one here:

preventing "interference with or disturbance of" activities for which the indoor spaces are designed. *Id.* at 977-79. The D.C. Circuit found that the indoor prohibition provided a reasonable means of furthering that purpose. *See id.*

FIU's regulation of indoor activities similarly satisfies the First Amendment. Like the regulations in *Sword* and *Nassif*, FIU's Regulation 110(3) protects the functions of its university buildings and preserves them for their intended uses by preventing the potential "myriad parades, demonstrations, and pickets" that could occur inside. And it does so in a manner that's easy to administer for the FIU official overseeing the event or law enforcement keeping order at the event.

Plaintiffs find no refuge in *Tinker* either. *Tinker* distinguished "pure speech" from "group demonstrations," like the conduct at issue here. 393 U.S. at 508. Later Supreme Court and Eleventh Circuit precedent confirms that universities can "establish reasonable time, place, and manner regulations." *Widmar*, 454 U.S. at 267 n.5, 276; *Bloedorn*, 631 F.3d at 1230; *see also Perry Educ. Ass'n*, 460 U.S. at 44. FIU's uniform application of its regulation designed to prevent disruption of university building functions is lawful under *Tinker* and later cases analyzing university and school regulations of activities. *See Sword*, 446 F.2d at 1098 (the lawfulness of a university's application of a reasonable conduct regulation "is not contingent upon the extent of disruption caused by [a student's] direct disobedience of the regulation") (quoting *Bayless v. Martine*, 430 F.2d 873, 879 (5th Cir. 1970)).

*Tinker* also involved "pure speech" and "[did] not concern aggressive, disruptive action or even group demonstrations." 393 U.S. at 508. The Supreme Court made clear that conduct which "materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Id.* at 513. Regulation 110(3) addresses precisely that concern. It reserves the most potentially disruptive

expressive activities to outdoor spaces while imposing reasonable restrictions on expression in FIU buildings.

And Plaintiffs' conduct falls squarely within the category of disruptive activity that can be regulated under *Tinker*. Plaintiffs' efforts to minimize what happened should be unavailing. The evidence establishes that Plaintiffs and their friends blocked the audience's view of the presentation. *See* **Exhibit C at 0:25-1:07**; **Exhibit D ¶ 4**. They occupied rows spanning the auditorium's length and plainly sought to interrupt and detract from the presentation by co-opting the event. *Id.* That is disruption. *Tinker* doesn't require a university to let students disrupt and co-opt university functions on demand. *See Grayned v. City of Rockford*, 408 U.S. 104, 119 (1972) ("[S]chools could hardly tolerate boisterous demonstrators who drown out classroom conversation, make studying impossible, block entrances, or incite children to leave the schoolhouse."); *Cox v. Louisiana*, 379 U.S. 536, 554 (1965) ("The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time.").

In sum, under FIU's regulations, Plaintiffs remain free to organize and protest outdoors, across university grounds—including immediately outside the building where this event took place. **Exhibit F**. But Plaintiffs have no right to co-opt FIU's operations and activities where they choose. The First Amendment doesn't require FIU to hand over the keys to its facilities and then tie its hands. *See Perry Educ. Ass'n*, 460 U.S. at 44.

**B. Regulation 110(3) is not facially overbroad.**

Plaintiffs' facial overbreadth challenge fares no better. To prevail, Plaintiffs must demonstrate that the regulation, as "properly interpreted," punishes "a substantial amount of protected free speech, judged in relation to the [regulation]'s plainly legitimate sweep." *Dream*

*Defs. v. Governor of Fla.*, 119 F.4th 872, 877 (11th Cir. 2024) (quotation omitted). In other words, Plaintiffs must show a "lopsided ratio"—that unconstitutional applications of Regulation 110(3) are "substantially disproportionate" to lawful applications. *United States v. Hansen*, 599 U.S. 762, 770 (2023). The Eleventh Circuit has also cautioned that facial overbreadth challenges, such as the one here, "are ordinarily disfavored and are generally harder to win." *Moms for Liberty*, 118 F.4th at 1333 (citing *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)). Courts should side with the challengers only "sparingly and only as a last resort." *Dream Defs*, 119 F.4th at 880 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

Plaintiffs, for their part, don't come close to making the requisite showing. They misread the regulation and then attack a strawman. They assert that Regulation 110(3) reaches all forms of expressive conduct and suggest, through a series of rhetorical questions, that it could ban articles of clothing. Doc.4 at 8-9. Not so. Even a cursory reading of Regulation 110(3) forecloses that interpretation. Regulation 110(3) doesn't reach all expressive conduct, and it doesn't create a university dress code. It prohibits a discrete set of expressive activities inside FIU's buildings: "protests, parades, marches, picketing, demonstrations, and *other similar* expressive activities." Doc.4-11 at 1 (emphasis added).

Plaintiffs also never identify which part of Regulation 110 makes an overbroad application possible. That omission is telling. In *United States v. Nassif*, the D.C. Circuit rejected a nearly identical overbreadth argument against analogous language in 40 U.S.C. § 5104(e)(2)(G)'s prohibition on parading, picketing, or demonstrating in the U.S. Capitol. Nassif, like the Plaintiffs here, asserted that the use of the term "demonstration" operated as an "outright ban on expressive activity." 97 F.4th at 979. The D.C. Circuit rejected that argument, reasoning that "a word is known by the company it keeps" and that "demonstrate" had to "be understood in the context of its

neighbors: 'picket' and 'parade'"—terms understood to refer to outwardly expressive activities that "draw[] attention" to the speaker. *Id.* at 980. The terms in Regulation 110(3) require the same reading. For the same reasons explained earlier, *supra* Argument § A, the regulation is reasonable and constitutionally sound.

Plaintiffs' overbreadth challenge must therefore fail. Plaintiffs offer mere conclusions, not an explanation of what terms or language in Regulation 110 produces their expansive reading. And, even if their reading were plausible—which it is not—this Court should reject it if any construction would avoid unconstitutional overbreadth. *See Broadrick*, 413 U.S. at 613 ("Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.").

**C. Plaintiffs are not entitled to an injunction.**

"Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *ACLU of Fla.*, 557 F.3d at 1198 (citations omitted). Plaintiffs' failure on the merits ends the inquiry regardless of remaining arguments.

***Conclusion***

The result is simple: this Court should deny Plaintiffs' motion for preliminary injunction.

Respectfully submitted, Date: August 17, 2026

/s/ Mohammad O. Jazil
MOHAMMAD O. JAZIL (Fla. Bar No. 72556)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
119 S. Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
kgordon@holtzmanvogel.com

*Counsel for Defendants*

## LOCAL RULE 7.1(c) CERTIFICATION

The undersigned certifies that the foregoing does not exceed twenty pages.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I certify that on August 17, 2026, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil