**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:26-cv-25395-JB/Torres

ICEBREAKERS, et al.,

Plaintiffs,

v.

JEANETTE NUÑEZ, et al.,

Defendants.

---

**DEFENDANTS' MOTION TO DISMISS**
**AND INCORPORATED MEMORANDUM OF LAW**

***Introduction***

Qualified immunity should bar the individual capacity claims against Defendants Amelia Rodriguez, Devin Parra, and Phillip Lloyd. Such immunity is the rule, not the exception, for individual-capacity claims seeking damages for alleged constitutional violations. Public officials are protected unless their conduct violated a constitutional right that was clearly established at the time of the alleged violation. But Plaintiffs sued these FIU administrators for simply applying the plain text of FIU's Regulation 110(3), which is facially neutral and had not been declared unconstitutional at the time of the protests at issue.

Plaintiffs' theory is that the Individual Defendants may be held liable under 42 U.S.C. § 1983 because Regulation 110(3) allegedly violates the First Amendment by failing to satisfy the standard in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). Defendants remain mindful that the Court has already granted a preliminary injunction, discussing Regulation 110's defects under the substantial likelihood for success prong. While Defendants respect that ruling, they address the merits of the First Amendment because that discussion reinforces the qualified-immunity analysis.

More specifically, even if this Court maintains the view that Regulation 110(3) is substantially likely to be unconstitutional, or that Plaintiffs have plausibly stated a constitutional claim, qualified immunity should still apply. That is because the law was not clearly established such that a reasonable university administrator would have known that applying the plain text of a content-neutral regulation was unlawful. The authorities addressing *Tinker*, university speech, and reasonable time, place, and manner restrictions are sufficiently unsettled that no reasonable administrator would have had the requisite notice.

Accordingly, even assuming a constitutional violation, and Defendants submit there is not, Rodriguez, Parra, and Hamilton are entitled to qualified immunity and should, at the very least, be dismissed from this case in their individual capacities.

## ***Background***

### A. Florida International University and Regulation 110

FIU regulates its campus and facilities to better serve its mission. Regulation 110—"Expressive Activities in Outdoor Areas on Campus"—governs expressive activities on FIU grounds. The regulation defines expressive activities as "assemblies, demonstrations, exercises of free speech, protests, parades, marches, and picketing protected under the First Amendment to the United States Constitution and Article 1 of the Florida Constitution." Compl. ¶ 52. Regulation 110 doesn't reach "commercial speech," Compl. ¶ 52, which FIU separately addresses through Regulation 114. *See* Doc.14-1.[1]

Regulation 110 has two key provisions. Start with Regulation 110(2): it broadly permits *all* expressive activities "in outdoor areas of campus so long as the conduct is lawful and does not materially and substantially disrupt the normal operations of the University or materially and substantially infringe upon the rights of others." Doc.4-11 at 1. Then comes Regulation 110(3), which limits only a *subset* of expressive activities within FIU's indoor spaces. This provision reads in full:

> To protect health, safety, and welfare and prevent disruption of University activities, *protests, parades, marches, picketing, demonstrations, and other similar expressive activities* are prohibited inside University buildings or other University indoor facilities. University buildings and other University indoor facilities *are designed for instruction, study, reflection, group discussion, research, administrative functions, and other University activities and operations*. This provision will be enforced in a content and viewpoint neutral manner.

---

[1] FIU's Regulations are central to Plaintiffs' claims and undisputed and may be considered for purposes of this motion. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Compl. ¶ 51 (emphasis added). Regulation 110(3) does not apply to all expressive activities—only protests, parades, marches, picketing, demonstrations, or other activities like those enumerated examples. *Id.*

**B. The Presidential Speaker Series and the Protest.**

On March 13, 2026, FIU hosted a live discussion as part of its "Presidential Speaker Series." *See* Compl. ¶ 37. The event featured FIU President, Jeanette Nuñez, and former professional baseball player and Miami-native, Alex "A-Rod" Rodriguez, in a large auditorium located in FIU's Student Academic Success Center. *Id.*

Plaintiffs allege that during the event, they and other members of ICEBreakers stood up in unison, turned their backs to the speakers, and faced the rear of the auditorium. Compl. ¶ 38. They wore identical t-shirts bearing the message "ICE OFF FIU." *Id.* Plaintiffs allege they stood in this fashion for "less than five minutes." Compl. ¶ 42.

After the incident, FIU initiated student conduct proceedings against Plaintiffs. Compl. ¶¶ 49-50. Defendant Rodriguez, in her capacity as an employee of FIU's Office of Student Conduct and Academic Integrity, informed Plaintiffs that they were being charged with violating Regulation 110. Compl. ¶¶ 49-50. Defendant Parra oversaw a student conduct hearing, where the Student Conduct Committee found Plaintiffs responsible for failing to comply with Regulation 110(3) at the March 2026 event and required them to complete a "video reflection." Compl. ¶¶ 64-67. Plaintiffs appealed the decision and Defendant Hamilton, in his capacity as the assigned appellate officer, upheld the finding of responsibility on appeal. Compl. ¶ 68.

Plaintiffs brought this lawsuit against FIU President Jeannette Nuñez and chair of FIU's Board of Trustees, Carlos Duart, in their official capacities. Compl. ¶¶ 17-18. Plaintiffs also sued Defendants Rodriguez, Parra, and Hamilton individually seeking money for their alleged roles in

finding Plaintiffs responsible for violating Regulation 110(3). Compl. ¶¶ 19-21. Plaintiffs sought a preliminary injunction against enforcement of Regulation 110, as well as against the requirement that Plaintiffs complete a "video reflection," which this Court previously granted. Doc. 4, 20.

***Legal Standard***

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* A pleading that offers "labels and conclusions," "[t]hreadbare recitals," or "a formulaic recitation of the elements" of a cause of action fails to make a claim plausible. *Id.* (cleaned up). Similarly, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 557).

Although parties are typically limited to the facts provided within the four-corners of a complaint in a motion to dismiss, the incorporation-by-reference doctrine allows for consideration of material if the material is "(1) central to the plaintiff's claim[,] and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The complaint doesn't even need to specifically refer to such material. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298-1300, & n.6 (11th Cir. 2024). "[U]ndisputed" in this context means "that [the incorporated material's] authenticity is not challenged." *Id.* at 1300; *see also Julmist v. Prime Ins. Co.*, 92 F.4th 1008, 1016 (11th Cir. 2024) (determining the district court appropriately considered an insurance policy attached to the motion to dismiss because it was central to the plaintiff's claims and undisputed).

***Argument***

**A. Plaintiffs fail to plausibly state a claim under the First Amendment.**

Plaintiffs' challenge Regulation 110(3) arguing that the substantial and material disruption standard under *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), provides the sole standard by which the government can regulate student expression in educational settings. Compl. ¶¶ 58, 60, 78-80. But Supreme Court precedent recognizes the government, in a college or university setting, may regulate speech under the *Tinker* standard *and* it may implement and enforce reasonable restrictions on the time, place, and manner of expressive conduct.

**1. Public universities and schools, like other government entities have the authority to impose reasonable time, place, and manner restrictions on conduct.**

The Supreme Court has expressly held that "[j]ust as in the community at large, reasonable regulations with respect to the time, the place, and the manner in which student groups conduct their speech-related activities must be respected." *Healy v. James*, 408 U.S. 169, 192-93 (1972). According to *Healy*, time, place and manner restrictions "merely constitute[] an agreement to conform with reasonable standards respecting conduct[,]" and do not infringe on a student's First Amendment rights. *Id. at* 193. The Court affirmed this principle again in *Papish*, observing that it had "repeatedly approved such regulatory authority," and holding that the disciplinary action at issue there was unconstitutional because it was based on disapproval of the "content" of the expression, not its "time, place, or manner." *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973).

The Eleventh Circuit followed suit, stating that schools have authority "to adopt and enforce reasonable, non-discriminatory regulations as to the time, place and manner of student expressions and demonstrations." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1271

(11th Cir. 2003) (quoting *Bayless v. Martine*, 430 F.2d 873, 878 (5th Cir. 1970)). *Holloman* admittedly generated some confusion on the point in its discussion of the *Tinker* standard in the context of reasonableness, *id.* at 1271-73, but a district court helpfully analyzed this discrepancy, observing that there is "disagreement among the Circuit Courts of Appeal as to whether *Tinker*'s holding applies to all regulation of student speech or only to viewpoint-based regulation" and that courts "are split on whether *Tinker* applies to content-neutral regulation of student conduct that only incidentally burdens student expression." *Bar-Navon v. Sch. Bd.*, No. 606-CV-1434, 2007 WL 3284322, at *6 (M.D. Fla. Nov. 5, 2007) (collecting cases). Because the Supreme Court applies a more lenient standard to content-neutral time, place, and manner regulations, the district court reasoned that it would "be illogical to provide more protection to student expressive conduct than is provided to adult expressive conduct" and that "*Tinker* therefore cannot apply to content-neutral regulation of student expressive conduct." *Id.* at *7.

The Eleventh Circuit affirmed that district court's decision. *See Bar-Navon v. Brevard Cnty. Sch. Bd.*, 290 F. App'x 273 (11th Cir. 2008). While the Eleventh Circuit held that the jewelry regulation at issue did not govern expressive conduct protected by the First Amendment, even assuming it did, expressive conduct is "susceptible to reasonable regulation by school authorities." *Id.* at 276-77. And because that regulation was both content and viewpoint neutral on its face, the Court stated that "[t]he district court was correct to apply . . . an intermediate level of scrutiny." *Id.* at 277. The Court further elaborated "that school officials 'must have the flexibility to control the tenor and contours of student speech within school walls or on school property, *even if such speech does not result in a reasonable fear of immediate disruption*.'" *Id.* (emphasis added) (quoting *Scott v. Sch. Bd. of Alachua Cnty.*, 324 F.3d 1246, 1248 (11th Cir. 2003)).

Other circuits have reached similar conclusions. *See, e.g., Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 507-08 (5th Cir. 2009) (abrogated on other grounds); *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 429-35 (9th Cir. 2008). And other district courts within the Eleventh Circuit have analyzed the university regulation under the time, place, and manner forum precedents. *See Tampa Bay Students for Democratic Soc'y v. Law*, 832 F. Supp. 3d 1182, 1197-98 (M.D. Fla. 2026) (assessing a student challenge to a university policy under the time, place, and manner analysis); *Students for Life USA v. Waldrop*, 162 F. Supp. 3d 1216, 1222-45 (S.D. Ala. 2016) (conducting an extensive forum analysis with respect to a speech zone policy governing student activities and upholding restrictions as a reasonable regulation of a limited public forum); *Auburn Alliance for Peace & Justice v. Martin*, 684 F. Supp. 1072, 1073 (M.D. Ala. 1988) (applying a time, place, and manner analysis and upholding content-neutral university regulations governing "speeches," "debates," and "demonstrations" in indoor and outdoor spaces of the campus).

Given the Supreme Court's approval of a university's clear authority to impose reasonable time, place, and manner restrictions that affect expressive activity, along with the Eleventh Circuit's determination that content neutral regulation of expressive conduct remains permissible in the school setting, it is untenable for Plaintiffs to claim that *Tinker* supplies the sole standard by which a university can regulate expressive activity.

**2. The Complaint fails to plausibly state a claim that Regulation 110(3) is unconstitutional and that Plaintiffs' First Amendment rights were violated.**

A content-neutral time, place, and manner restriction affecting expressive conduct survives if it is "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication of the information." *Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale*, 11 F.4th 1266, 1292 (11th Cir. 2021) (quoting *Clark v. Cmty. for Creative*

*Non-Violence*, 468 U.S. 288, 293 (1984)). Under this standard, the regulation "need not be the least restrictive or least inclusive means of serving the government's interests," and the government will satisfy the standard "so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation, and the means chosen are not substantially broader than necessary to achieve the government's interest." *Id.* at 1295 (cleaned up).

Regulation 110(3) is content-neutral. "[A] regulation of expressive conduct is content neutral if the justification for the regulation is unrelated to the suppression of free expression." *Food Not Bombs*, 11 F.4th at 1292. And the regulation, on its face, must not draw distinctions based on the message conveyed by the expressive conduct. *See id.* (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015)). Regulation 110(3) applies to "protests, parades, marches, picketing, demonstrations, and other similar expressive activities." Compl. ¶ 51. Regulation 110(3) only restricts those activities within FIU buildings and indoor facilities, which "are designed for instruction, study, reflection, group discussion, research, administrative functions, and other University activities and operations." Compl. ¶ 51. The stated purpose of the regulation is "[t]o protect health, safety, and welfare and prevent disruption of University activities." Compl. ¶ 51. Thus, by its own terms, Regulation 110(3)'s is crafted to mitigate the disruptive effect of certain forms of expressive conduct on university functions, not to suppress expression. And Regulation 110(3) draws no distinctions based on the message conveyed—it applies "evenhandedly" to the *activities*, without making distinctions based on the message conveyed by those activities. *See Scott v. City of Daytona Beach*, No. 24-12662, 2026 WL 1830927, at *12 (11th Cir. 2026).

The only content-based distinction Plaintiffs identify in their complaint is one subjecting commercial speech to more stringent, commercial regulation by FIU. *See* Compl. ¶ 86; Doc.14-1.

But that carveout is also subject to intermediate scrutiny. *See, e.g., Scott*, 2026 WL 1830927, at *12 n.13 (recognizing that the commercial-speech doctrine permits the government to regulate commercial advertising more freely); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203 (M.D. Fla. 2022). Regulation 110(3) does not, as Plaintiffs suggest, "permit" commercial speech where it forbids the enumerated activities. As discussed during the preliminary injunction briefing, a separate FIU regulation, subjects commercial speech to more stringent regulation due to the commercial nature of the activity. *See* Doc.14-1. Plaintiffs' allegation that Regulation 110(3) is a content-based regulation is unfounded, and no alleged facts support that assertion.

Further, Plaintiffs do not allege that Regulation 110(3) fails to serve a significant government interest. A content-neutral time, place, and manner restriction on expressive conduct survives if it is "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication of the information." *Food Not Bombs*, 11 F.4th at 1292 (quoting *Clark*, 468 U.S. at 293). Regulation 110(3) serves FIU's "significant government interest" in preventing disruption of activities in FIU's indoor spaces and protecting the health, safety, and welfare of persons occupying those buildings. *See Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 650-51 (1981) ("a State's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective"); *see also Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1318 (11th Cir. 2000) ("To demonstrate the significance of its interest, the [university] is not required to present detailed evidence, but is entitled to advance its interest by arguments based on appeals to common sense and logic." (cleaned up)).

Plaintiffs also don't allege that Regulation 110(3) is not narrowly tailored to serve that interest. Nor do they allege that FIU's regulations fail to leave open sufficient alternative channels

for the communication of their message. Regulation 110(3)'s coverage is facially limited to "protests, parades, marches, picketing, demonstrations, and other similar expressive activities," and only restricts those specific activities within FIU buildings and indoor facilities, which "are designed for instruction, study, reflection, group discussion, research, administrative functions, and other University activities and operations." Compl. ¶ 51. Through this coverage, Regulation 110(3) establishes an appropriate balance between preventing disruption of university activities, while still allowing for expressive activities indoors that are not expected to disrupt university function. For example, Regulation 110(3) does not prohibit other expressive activities indoors such as direct communication, passing out flyers, tabling, and wearing clothing and attire with messages. Compl. ¶ 51. And FIU's regulations expressly permit "protests, parades, marches, picketing, demonstrations, and other similar expressive activities" in the outdoor spaces of the university. *See* Doc. 4-11.

The Complaint alleges that Regulation 110(3) and Defendants' application of that Regulation are unconstitutional because the Regulation encompasses non-disruptive conduct beyond the scope of *Tinker* and because it is "impermissibly overbroad." Compl. ¶¶ 78-79, 87. But as discussed, *Tinker* does not supply the only standard by which a university may regulate student conduct.

Plaintiffs likewise fail to state a claim that Regulation 110(3) is overbroad. A regulation is overbroad where, as "properly interpreted," it "punishes a substantial amount of protected free speech, judged in relation to the [regulation]'s plainly legitimate sweep." *Dream Defs. v. Governor of Fla.*, 119 F.4th 872, 877 (11th Cir. 2024) (quotation omitted). In other words, Plaintiffs must show a "lopsided ratio"—that unconstitutional applications of Regulation 110(3) are "substantially disproportionate" to lawful applications. *United States v. Hansen*, 599 U.S. 762, 770 (2023). The

Eleventh Circuit has cautioned that facial overbreadth challenges, such as the one here, "are ordinarily disfavored and are generally harder to win." *Moms for Liberty v. Brevard Pub. Schs.*, 118 F.4th 1324, 1333 (11th Cir. 2024) (citing *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)).

Plaintiffs' claim that Regulation 110 prohibits substantially more protected speech than expressive activity that can be lawfully regulated fails on a plain reading of the regulation. Regulation 110(3) only applies to "protests, parades, marches, picketing, demonstrations, and *other similar* expressive activities." Compl. ¶ 51 (emphasis added). Rather than prohibiting all indoor expressive activities, Regulation 110(3) only applies to expressive activities "similar" to "protests," "parades," "marches," "picketing," and "demonstrations." Compl. ¶ 51; *see also Marigrove, Inc. v. Sauer de Arruda Pinto*, No. 14-CV-22580, 2015 WL 13857424, at *6 n.11 (S.D. Fla. Mar. 30, 2015) ("Ejusdem generis is the idea that, 'when general words follow an enumeration of specific terms the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding words.'" (quoting *Mia. Heart Inst. v. Sullivan*, 868 F.2d 410, 413 (11th Cir. 1989))).

Put another way, rather than using wholesale the definition of "expressive activities" earlier in the regulation, *see* Compl. ¶ 52, the sweep of Regulation 110(3) is much more limited. And not only is Plaintiffs' construction of Regulation 110 incorrect—it should be rejected if there are any constructions that would prevent the regulation from being unconstitutionally overbroad. *See Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) ("Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.").

In line with FIU's educational mission, Regulation 110(3) prohibits certain activities that interrupt the learning environment the university works hard to foster. That regulation of some expressive activity on campus is legitimate. Taking Regulation 110(3) as "properly interpreted,"

*Dream Defs.*, 119 F.4th at 877, Plaintiffs can't show that the lawful applications of the regulation are substantially outweighed by any unconstitutional applications. Thus, the claim should be dismissed.

**B. Plaintiffs' claims against Defendants Rodriguez, Parra, and Hamilton are entitled to qualified immunity.**

Even if this Court determines that Plaintiffs have stated a plausible claim under the First Amendment, there's no way Defendants Rodriguez, Parra, Hamilton, or a reasonable university administrator in their position would have known they were violating a clearly established constitutional right at the time. The Court should therefore dismiss them on qualified immunity grounds.

"The doctrine of qualified immunity protects [public] officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Baxter v. Roberts*, 54 F.4th 1241, 1255-56 (11th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The protection applies to officials in administrative roles at public universities. *See, e.g.*, *Williams v. Ala. State Univ.*, 102 F.3d 1179 (11th Cir. 1997). To invoke qualified immunity, all a defendant must establish is that he was acting within the scope of his discretionary authority when the allegedly wrongful act occurred. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019). The Individual Defendants readily satisfy this requirement because, as the complaint itself alleges, they undertook all the challenged actions in their administrative roles at FIU. *Compare* Compl. ¶ 89, *with Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). Given this minimal threshold, qualified immunity is triggered.

To overcome qualified immunity, Plaintiffs must also provide sufficient facts to plausibly establish that (1) the Individual Defendants violated the law, and (2) the illegality of their conduct

was clearly established. *See Christmas v. Harris County*, 51 F.4th 1348, 1354 (11th Cir. 2022). Plaintiffs fail at both.

As discussed in the preceding section, Plaintiffs fail to plausibly allege a constitutional violation, so Defendants Rodriguez, Parra, and Hamilton are necessarily entitled to qualified immunity.

But even if they violated Plaintiffs' constitutional rights, Plaintiffs cannot show that the Individual Defendants violated a clearly established right. "In determining whether the constitutional right at issue was 'clearly established' at the time the [official] acted, we ask whether the contours of the right were sufficiently clear that every reasonable [official] would have understood that what he was doing violates that right." *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021). Bare allegations of malice aren't enough. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). To establish that a constitutional right was "clearly established," Plaintiffs must do one of three things:

> (1) come forward with "case law with indistinguishable facts clearly establishing the constitutional right," (2) point to "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right," or (3) show that officials engaged in "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."

*Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1323-24 (11th Cir. 2024) (quoting *Prosper*, 989 F.3d at 1251).

Plaintiffs say the Individual Defendants are liable for money damages solely because they applied an allegedly unconstitutional regulation. Compl. ¶ 89 ("Defendants Rodriguez, Parra, and Hamilton were acting under color of state law and violating the Individual Plaintiffs' clearly established rights *when they enforced FIU Regulation 110* to punish the Individual Plaintiffs for their protest." (emphasis added)). That's not enough to show notice. Regulation 110 wasn't

declared unconstitutional at the time they acted. Therefore, it could not have been apparent to the Individual Defendants that they were violating Plaintiffs' constitutional rights through their simple application of Regulation 110. *See Cooper v. Dillon*, 403 F.3d 1208, 1220-21 (11th Cir. 2005) ("Dillon was eligible for qualified immunity because he was acting under his discretionary authority in enforcing FLA. STAT. ch. 112.533(4) and its unlawfulness was not clearly established."); *see also Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("[P]olice officers on the street are ordinarily entitled to rely on the assumption that [legislators] have considered the views of legal counsel and concluded that the ordinance is a valid and constitutional exercise of authority.").

Indeed, the Supreme Court has held that the "enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). This reasoning extends to the alleged facts here: FIU enacted Regulation 110(3), and Plaintiffs sole basis for alleging liability as to the Individual Defendants is their application of the clear text of that regulation to Plaintiffs within the course of Defendants' official duties. Regulation 110(3) has not been found unconstitutional. That Regulation is consistent with Supreme Court case law, as well as Florida law authorizing reasonable, content-neutral time place and manner restrictions. *See* § 1004.097(3)(C). The potential outcome of *this* case does not bear on the immunity issue; the Individual Defendants are entitled to qualified immunity for their application of Regulation 110(3) because its unlawfulness was not "clearly established" at the time of application. *See Cooper*, 403 F.3d at 1220; *see also Watkins v. Shields*, 861 F. App'x 812, 815 (11th Cir. 2021) (police officers entitled to qualified immunity for their enforcement of a park rule challenged as unconstitutional

because the park rule "or something materially identical" had not been declared unconstitutional at time of arrest).

Regardless, Plaintiffs cannot show that the law "clearly established" that application of Regulation 110(3) to Plaintiffs was unconstitutional. The Eleventh Circuit has held that "[i]t is particularly difficult to overcome the qualified immunity defense in the First Amendment context." *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) (citing cases). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993), *as modified*, 14 F.3d 583 (11th Cir.1994).

As to the first method of overcoming qualified immunity—the usual way of demonstrating a clearly established right—Plaintiffs cannot "point to a case, in existence at the time of the incident," in which an appropriate court "found a violation based on materially similar facts." *Baxter*, 54 F.4th at 1263 (cleaned up). Supreme Court and Eleventh Circuit precedent governing student speech did not put the Individual Defendants on notice that Regulation 110(3) is unconstitutional.

Plaintiffs rely on *Tinker* for alleging liability, but as discussed in the preceding sections, *Tinker* does not clearly establish in this Circuit that a content-neutral time, place, and manner restriction like Regulation 110(3) is outside FIU's authority to implement. *See Bar-Navon*, 290 F. App'x at 276-77; *Bar-Navon v. Sch. Bd.*, 2007 WL 3284322, at *6. And Plaintiffs' principle Eleventh Circuit case dealing with student speech likewise does little to provide clarity on the issues posed by this case. While *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, denied qualified immunity on the grounds that the *Tinker* standard was clearly established, it did not address or consider whether a content-neutral regulation like Regulation 110(3) is constitutional

in the university and college setting. In fact, courts within this Circuit have applied a time, place, and manner analysis to university regulations without applying *Tinker*. *See Tampa Bay Students for a Democratic Soc'y v. Law*, 832 F. Supp. 3d 1182, 1197-98 (M.D. Fla. 2026); *Students for Life USA v. Waldrop*, 162 F. Supp. 3d 1216, 1222-45 (S.D. Ala. 2016); *Auburn Alliance for Peace & Justice v. Martin*, 684 F. Supp. 1072, 1073- (M.D. Ala. 1988). Thus, even if the Court rules that *Tinker* supplies the proper standard, its applicability to Regulation 110(3) is not clearly established in the university setting. *See Sasser v. Bd. of Regents*, No. 21-14433, 2023 WL 2446720, at *5 (11th Cir. Mar. 10, 2023) ("Still, it is not clear to what extent *Tinker* applies to the university setting, making it all the more obvious that the law in this area is not so clearly established to put the individual Defendants on notice so as to defeat qualified immunity.").

To the extent Plaintiffs rely on *Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022), to "clearly establish" that Regulation 110(3) is overbroad, that likewise fails. The regulation there was materially distinct, applying to virtually any manner of speech and conduct, as well as targeting the content of that speech. *See id.* at 1125-27. Regulation 110(3) is far more limited in scope, with clearly stated bounds, and is content-neutral.

And with respect to the *application* of Regulation 110(3) to Plaintiffs demonstration at the March 2026 event, it is far from clear that the Individual Defendants' actions were unconstitutional under the relevant precedent. Plaintiffs do not allege that the March event took place in an open or designated public forum. The government generally has *more* ability to regulate conduct within a limited public forum. *See McDonough v. Garcia*, 116 F.4th 1319, 1322 (11th Cir. 2024) (Regulations of limited and non-public forums "survive so long as they are viewpoint neutral and reasonable."). Even if the Court finds that such regulations must still satisfy *Tinker* in the university setting, that legal principle is far from clearly established within this Circuit. *See Students for Life*

*USA*, 162 F. Supp. 3d at 1222-45 (conducting an extensive forum analysis of a university campus and reviewing university regulations applicable to students under the standard applicable to limited and non-public forums without any mention of *Tinker*).

Even assessing the Individual Defendants' actions under the *Tinker* framework, Plaintiffs cannot show that this application is clearly established to be unconstitutional under *Tinker*. *Tinker* itself involved the passive wearing of armbands without any affirmative actions by the students that did not intrude on the work or rights of other students. *See* 393 U.S. at 508. The Court expressly stated that the facts did "not concern aggressive, disruptive action *or even group demonstrations*." *Id.* (emphasis added). And in *Holloman*, the school argued that it punished a single student's action based on other students' reaction to the speech at issue, rather than any objective measure of disruption. *See* 370 F.3d at 1274-76. The facts Plaintiffs allege here are plainly distinct. And unlike in *Tinker* and *Holloman*, there is no allegation that the Individual Defendants acted based on some disagreement with the views that Plaintiffs expressed. *Cf. Tinker*, 393 U.S. at 510-11 (explaining that school officials "singled out for prohibition" a particular viewpoint); *Holloman*, 370 F.3d at 1281 ("The record, interpreted in the light most favorable to Holloman, more than amply supports his argument that he was punished for the substance of his unpatriotic views rather than an alleged disruption of class.").

Accordingly, Plaintiffs cannot identify binding case law clearly establishing and placing Defendants on notice that application of Regulation 110(3) violates Plaintiffs' First Amendment rights. And as to the second and third methods, Plaintiffs face a tougher task. These "'obvious clarity' cases," *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020), are "rare," *Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 663 (11th Cir. 2022) (cleaned up). They involve "a principle or provision so clear that, even without specific guidance from a decision involving materially similar

facts, the unlawfulness of the [official's] conduct is apparent." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022). To state the obvious here, misapprehending the complicated framework surrounding the regulation of student expression, and parsing cases that vary in what standards they apply in university settings, certainly cannot rise to the level of "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Jarrard*, 115 F.4th at 1323-24 (quoting *Prosper*, 989 F.3d at 1251); *see also Radwan v. Manuel*, 55 F.4th 101, 120 (2d Cir. 2022) ("[T]he law governing restrictions on student speech can be difficult and confusing, even for lawyers, law professors, and judges and the relevant Supreme Court cases can be hard to reconcile, and courts often struggle to determine which standard applies in any particular case.'") (cleaned up); *Morse v. Frederick*, 551 U.S. 393, 401 (2007) (observing that "[t]here is some uncertainty at the outer boundaries as to when courts should apply school speech precedents").

Thus, even if the Court finds that Defendants state a claim for a constitutional violation, it should dismiss Plaintiffs' claims against the Individual Defendants on qualified immunity grounds.

***Conclusion***

Accordingly, the Court should dismiss Count I or, alternatively, dismiss the individual defendant claims under Count I against Defendants Rodriguez, Parra, and Hamilton, including the individual claims for compensatory relief under Paragraphs C and D of Plaintiffs' Request for Relief.

Respectfully submitted, Dated: September 1, 2026

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
kgordon@holtzmanvogel.com

*Counsel for Defendants*

**LOCAL RULE 7.1(c) CERTIFICATION**

The undersigned certifies that the foregoing does not exceed twenty pages.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

**CERTIFICATE OF SERVICE**

I certify that on September 1, 2026, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil