**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:26-cv-25395-JB/Torres

ICEBREAKERS, et al.,

Plaintiffs,

v.

JEANETTE NUÑEZ, et al.,

Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

***Introduction***

Once qualified immunity is invoked, Plaintiffs bear the burden of overcoming it. To do so, they must show that the alleged facts establish that the Individual Defendants violated a constitutional right that was clearly established in the Eleventh Circuit. Plaintiffs attempt to carry that burden by relying generally on *Tinker* and specifically on a single Eleventh Circuit decision. But that Eleventh Circuit decision is factually distinguishable. Whether *Tinker* applies in the university setting remains unsettled, as well. Even decisions applying *Tinker* to student-speech regulations have not clearly displaced the framework governing reasonable time, place, and manner restrictions. That uncertainty is especially significant where, as here, Plaintiffs seek to hold university employees personally and financially liable for enforcing a university regulation in the ordinary course of their duties. Therefore, even if Regulation 110(3) is ultimately held unconstitutional, the Individual Defendants are entitled to qualified immunity. Given the unsettled law, the materially distinct facts, and the difficulty of applying First Amendment doctrine to such regulations, this Court should dismiss Defendants Rodriguez, Parra, and Hamilton.

***Argument***

**A. Plaintiffs continue to misapprehend the standard and the plain language of Regulation 110(3).**

FIU focuses on qualified immunity because Plaintiffs bear—and fail to carry—their burden on that issue. Before turning to qualified immunity, however, FIU addresses three arguments concerning the governing standard and the text of Regulation 110(3).

*First*, Plaintiffs skim past *Bar-Navon v. Brevard County School Board*, 290 F. App'x 273 (11th 2008) without addressing the key issue there. *Tinker* does not override reasonable time, place, and manner restrictions, and such restrictions do not need to satisfy the *Tinker* standard if they are viewpoint and content-neutral and narrowly tailored to a substantial government interest. *See Bar-*

*Navon*, 290 F. App'x at 277; *Bar-Navon v. Sch. Bd. of Brevard Cnty.*, No. 6:06-cv-1434, 2007 WL 3284322, at *5-7 (M.D. Fla. Nov. 5, 2007). Defendants acknowledge that the Eleventh Circuit affirmance is unpublished, but a district court persuasively determined that *Tinker* does not foreclose that line of cases, and the Eleventh Circuit affirmed that decision. Plaintiffs do not cite any Supreme Court or Eleventh Circuit precedent holding otherwise. Plaintiffs maintain that *Tinker* displaced this line of cases, but other circuits have found that the time, place, and manner test retains its force in the educational context. *See, e.g., Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437 (5th Cir. 2001). And the Eleventh Circuit agreed—holding that a school could impose content-neutral jewelry restrictions, even if that constituted a speech restriction and even without a forecast of substantial disruption, *Bar-Navon*, 290 F. App'x at 277.

This distinction is significant. While *Tinker* provides a more lenient First Amendment standard when it comes to viewpoint-hostile regulation, "[t]he *Tinker* standard of scrutiny for regulation of student speech is more demanding than the time, place, and manner standard of scrutiny for content-neutral regulation of adult expressive conduct." *Bar-Navon*, 2007 WL 3284322 at *6-7 (citing *Canady*, 240 F.3d at 443). Requiring universities to regulate *all* expressive conduct under the *Tinker* standard would subject all content-neutral university regulations to a more stringent level of scrutiny than government regulations are required to undergo in other settings. Put another way, it would add *Tinker*'s substantial disruption as an element to enforce any content-neutral time, place, and manner regulation.[1]

[1] *Auburn Alliance for Peace & Justice v. Martin*, 684 F. Supp. 1072 (M.D. Ala. 1988) highlights the distinction. The court there analyzed a university's application of a content-neutral "time, place and manner" restriction on public demonstrations to students' request to conduct a public "camp-out" demonstration on campus grounds. 684 F. Supp. at 1073-74. While the court referenced the prevention of disruption or interference as a reasonable basis for implementing the restriction, the court ultimately upheld the regulation under *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984) without making an express finding that the activity would, in fact,

*Second*, Plaintiffs assert, without explanation or analysis, that Regulation 110(3) "specifically targets expressive activity based on its content." Response at 9. Plaintiffs do not support this assertion, nor do they respond to FIU's discussion of this point. The applicability of Regulation 110(3) does not depend on the content or message conveyed by an activity encompassed by that regulation. *See* Compl. ¶ 51. Plaintiffs do not provide any analysis to support their position, nor do they allege that Regulation 110(3) has been applied in a content or viewpoint-dependent manner.

*Third*, Plaintiffs repeat their contention that all expressive activities are banned indoors and that the inclusion of the term "protest" means that FIU can ban any activity it deems to be a protest. Response at 6-7, 9. Again, Plaintiffs selectively read portions of a regulation that can only be reasonably read to apply to a subset of conduct, not all expressive activity as Plaintiffs suggest. And the term protest does not appear alone, it is accompanied by the terms "parades," "marches," "picketing," and "demonstrations." Compl. ¶ 51. Applying the traditional rules of construction, "protest" must be interpreted in a manner consistent with the meaning of the other enumerated terms. *See United States v. Dawson*, 64 F.4th 1227, 1237 (11th Cir. 2023) ("[N]oscitur a sociis 'counsels that a word is given more precise content by the neighboring words with which it is associated.'" (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)). In that context, protest must be read to encompass organized, group activities like a demonstration or march which FIU determined can be disruptive to indoor spaces. This Court should reject Plaintiffs' effort to broaden the language of Regulation 110(3), especially where the Complaint does not allege that FIU has applied the regulation in a content-based manner.

---

substantially disrupt university functions or interfere with the rights of others. *See Auburn All.*, 684 F. Supp. at 1076-77. It was sufficient that the university's regulation and its application were content-neutral, reasonable, and left open sufficient alternate avenues for expression. *See id.*

**B. Plaintiffs fail to satisfy their burden on qualified immunity.**

Plaintiffs concede that the Individual Defendants were acting within the scope of their discretionary authority when they allegedly violated Plaintiffs' rights, Response at 9 n.1, and thus Plaintiffs bear the burden of demonstrating that the Individual Defendants are not entitled to qualified immunity, *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019). Even if Plaintiffs have alleged a constitutional violation, they cannot overcome their burden on qualified immunity because they cannot show that the Individual Defendants violated a "clearly established" right. *See Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (to establish that qualified immunity is not appropriate, the plaintiff bears the burden to demonstrate both that the defendant violated the plaintiff's constitutional right and that the right was "clearly established").

Fundamentally, Plaintiffs fail to show that a content- and viewpoint-neutral time, place, and manner restriction is clearly-established to be invalid within the Eleventh Circuit unless it also incorporates the *Tinker* standard. To show a right was clearly established Plaintiffs must (1) come forward with case law with indistinguishable facts establishing the right; (2) point to a broad statement of principle clearly establishing the right; or (3) point to conduct "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1323-24 (11th Cir. 2024) (quoting *Prosper*, 989 F.3d at 1251).

At the outset, Plaintiffs downplay the significance of *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005), characterizing it as a "rehash" of the qualified immunity standard. Plaintiffs miss the point. *Cooper* interpreted and applied Supreme Court precedent in *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) to hold that a police official was immune, in his individual capacity, from liability for enforcing a statute that had not yet been found unconstitutional absent a finding that the statute was "so grossly and flagrantly unconstitutional" as to put the official on notice of its illegality. *Cooper*, 403 F.3d at 1220.

In a decision applying *Cooper*, a district court within the Eleventh Circuit assessed an argument that officials were not entitled to qualified immunity because they applied a content-based speech restriction that was subject to strict scrutiny. *Hetherington v. Madden*, No. 3:21-cv-671, 2021 WL 4958094, at *2-3 (N.D. Fla. Aug. 17, 2021). Even where the plaintiff had demonstrated a substantial likelihood of success that the challenged statute would fail strict scrutiny, that was not enough to overcome qualified immunity, per the court. *Id.* at *3. Because the statute reflected that the legislature had made an "attempt" at tailoring, the court found that the defendants "were not required to speculate as to whether this attempt at tailoring would survive strict scrutiny." *Id.* (collecting cases).

That reasoning extends to the facts here. Regulation 110(3) is subject to intermediate scrutiny and contains provisions tailoring the scope of the regulation to FIU's substantial governmental interest in preventing the disruption of university functions. Regulation 110(3) only applies to indoor spaces and a subset of expressive conduct, and Regulation 110 as a whole provides ample alternative avenues for expressive conduct. *See* Dkt. No. 4-11 at 1-5 (effectively designating the outdoor areas of campus as a public forum and noting that nothing in the regulation prevents FIU from allowing areas of campus to be scheduled or reserved in advance for use). Even if this Court finds that Regulation 110(3) fails under intermediate—or even strict—scrutiny, the Individual Defendants are not required to "speculate" as to whether the regulatory body had succeeded in its efforts to establish a lawful regulation. *See Hetherington*, 2021 WL 4958094, at *3; *see also Lederman v. United States*, 291 F.3d 36, 47 (D.C. Cir. 2002) (reaching similar conclusion with respect to an unconstitutional Capitol-grounds regulation). And Plaintiffs do not show that a materially similar regulation has been stricken down, or that Regulation 110(3) is grossly and flagrantly unconstitutional. *Cf. Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th

Cir. 1994) (referencing truly egregious events such as the Holocaust and the My Lai massacre as situations where individuals would not be immune for implementing policies or orders promulgated by superiors).

But even if *Cooper* didn't apply, Plaintiffs fail to meet their burden to overcome qualified immunity. On the first method, Plaintiffs assert that *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004) presents the lone "materially similar" case that put the Individual Defendants on notice and thus should foreclose qualified immunity. Aside from this bare assertion, Plaintiffs provide no analysis or explanation for why they believe *Holloman* satisfies this prong. Determining whether a case is "materially similar" requires a court to consider "whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case." *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (quotation omitted). To satisfy this first method, a case "must be close enough to have put the statutory or constitutional question beyond debate." *Id.* at 1209-10 (citation and quotation omitted).

*Holloman* is "fairly distinguishable" from the alleged facts alleged here. *Holloman* involved a high school student who remained silent during the Pledge of Allegiance and raised his fist. 370 F.3d at 1260-61. *Holloman* also did not involve the application of a content- and viewpoint-neutral time, place, and manner restriction. *Id.* Instead, school officials disciplined the student for refusing to comply with a mandate to participate in the Pledge—a content and viewpoint-based mandate. *Id.* The evidence in *Holloman* differed, as well, with the record supporting a finding that the defendants had engaged in viewpoint-based discrimination. *Id.* at 1280-82. Plaintiffs, in this case, allege no comparable viewpoint-based enforcement here. Finally, the conduct and setting in *Holloman* differ. Even if *Tinker* applies, this case concerns a group demonstration during a scheduled event that obstructed audience members' view—not a single

high school student's silent refusal to participate in the Pledge. Compl. ¶¶ 37–39. As such, because *Holloman* arose in a materially different educational setting, involved a different type of restriction, and rested on evidence of viewpoint discrimination absent here, it did not place the Individual Defendants on notice that enforcing Regulation 110(3) violated clearly established law.

On the second method, Plaintiffs contend that the "*Tinker* line of cases" provides a general principle of law clearly establishing that the Individual Defendant could not rely on Regulation 110(3). Response at 11. But as discussed in the preceding section, it has not been clearly established in the Eleventh Circuit that *Tinker* displaced the validity of reasonable and content-neutral time, place, and manner restrictions in the university context. *See Bar-Navon*, 290 F. App'x at 276-77; *Bar-Navon v. Sch. Bd.*, 2007 WL 3284322, at *6. And Defendants identified cases within this circuit where courts have analyzed time, place, and manner or forum restrictions without undertaking a *Tinker* style analysis. *See Tampa Bay Students for a Democratic Soc'y v. Law*, 832 F. Supp. 3d 1182, 1197-98 (M.D. Fla. 2026); *Students for Life USA v. Waldrop*, 162 F. Supp. 3d 1216, 1222-45 (S.D. Ala. 2016); *Auburn Alliance for Peace & Justice v. Martin*, 684 F. Supp. 1072, 1073- (M.D. Ala. 1988).

The Eleventh Circuit has also sustained dismissal based on qualified immunity in the First Amendment context, explaining that "it is not clear to what extent *Tinker* applies to the university setting, making it all the more obvious that the law in this area is not so clearly established to put the individual Defendants on notice so as to defeat qualified immunity." *Sasser v. Bd. of Regents*, No. 21-14433, 2023 WL 2446720, at *5 (11th Cir. Mar. 10, 2023); *cf. Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127 n.6 (11th Cir. 2022) (observing that this Circuit's precedent on the application of *Tinker* in the university setting "sends mixed signals"). And where multiple, competent federal district court judges and a panel of the Eleventh Circuit have found that content-

neutral time, place, and manner limitations on speech are lawful in the school setting if they can survive intermediate scrutiny, it simply cannot be said that the Individual Defendants were placed on notice that their application of Regulation 110(3) violated clearly established law.

Finally, on the third method, Plaintiffs suggest in a conclusory fashion that this case presents the rare circumstance where qualified immunity should be denied even absent applicable case law. Response at 11. Plaintiffs' argument is based on their repeated (and incorrect) assertion that Regulation 110(3) "prohibits 'exercises of free speech.'" *Id.* Defendants must also repeat here that Regulation 110(3) *plainly does not prohibit all speech*. The Regulation applies, in a content-neutral manner, to certain forms of expressive conduct and directs that those activities should occur in a less-disruptive setting. *See* Compl. ¶ 51. The Regulation does not encompass pure speech, clothing, handing out flyers, or any other number of expressive activities that Plaintiffs attempt to sweep in. Thus, Plaintiffs contention that the third method is satisfied because Regulation 110(3) amounts to a blanket speech ban is meritless.

In responding to these arguments, FIU is not saying that the Plaintiffs do not have good faith concerns regarding the scope and constitutionality of Regulation 110(3). And FIU recognizes that this Court found that Plaintiffs are substantially likely to succeed on the merits of their challenge to the Regulation. But it is important to provide some context here. Some version of Regulation 110 has been in place for nearly 18 years, with earlier versions containing similar language and restrictions. An amendment which went into effect on November 14, 2008, defined "Demonstrations" as "activities such as assemblies, exercises of free speech, protests, parades, marches, and picketing." FIU Regulation 110(1)(a) (Nov. 14, 2008), available at

https://regulations.fiu.edu/wp-content/uploads/2025/11/FIU-110-2008-11-14.pdf.[2] And that version likewise prohibited the use of FIU's indoor facilities for "demonstrations" absent prior written approval. *Id.* § (3). This is not a situation where, as Plaintiffs imply, the Individual Defendants are applying some novel policy to Plaintiffs.

In assessing whether the Individual Defendants, by applying Regulation 110(3) in the normal course of their duties, should be subject to personal financial liability, the analysis should remain focused on the facts and background law at issue here. These Defendants applied a generally applicable, content-neutral regulation that a regulatory body plainly tailored to address circumstances anticipated to disrupt university functions—a regulation that is similar in form to prior, seemingly unchallenged regulations—while providing alternate avenues and means for expression.

Whether the *degree* of tailoring in the First Amendment context would survive scrutiny is not a question that individual government officials can reasonably be expected to predict to avoid individual liability. *See Hetherington*, 2021 WL 4958094, at *2-3. The body of law that applies here is complex, and the issue of whether time, place, and manner restrictions in this Circuit are displaced by *Tinker* in the university setting is not clear. *See Gaines*, 871 F.3d at 1210 ("It is particularly difficult to overcome the qualified immunity defense in the First Amendment context."). Plaintiffs have the burden here and, aside from conclusory assertions regarding the general standards set forth by school-speech cases, they make no effort to identify clear law placing

---

[2] Past versions of FIU's regulations are matters of public record that this Court may consider. *See Halmos v. Bombadier Aero. Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) ("We have held that a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion.").

the Individual Defendants on notice. Even if the challenge to Regulation 110(3) survives, the Court should dismiss the Individual Defendants on qualified immunity grounds.

***Conclusion***

For the reasons stated in Defendants' Motion to Dismiss and this Reply, the Court should dismiss Count I or, alternatively, dismiss the individual defendant claims under Count I against Defendants Rodriguez, Parra, and Hamilton, including the individual claims for compensatory relief under Paragraphs C and D of Plaintiffs' Request for Relief.

Respectfully submitted, Date: September 22, 2026

/s/ Mohammad O. Jazil
MOHAMMAD O. JAZIL (Fla. Bar No. 72556)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
119 S. Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
kgordon@holtzmanvogel.com

*Counsel for Defendants*

**LOCAL RULE 7.1(c) CERTIFICATION**

The undersigned certifies that the foregoing does not exceed ten pages.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

**CERTIFICATE OF SERVICE**

I certify that on September 22, 2026, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil